# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### McALLEN DIVISION

| | | |
|---|---|---|
| **ESTATE OF GABRIEL MIRANDA, Jr.** | § | |
| **MARIA FUENTES,** | § | |
| **GABRIEL MIRANDA, Sr.,** | § | |
| **ALEXANDRIA SUZANNE DELEON,** | § | |
| **REUBEN ANTONIO DELEON III,** | § | |
| **and JON HIDALGO DOE** | § | **C.A. No. _____** |
| **Individually and On Behalf of All** | § | |
| **Other Similarly Situated Plaintiffs** | § | |
| **Plaintiffs** | § | |
| **vs.** | § | |
| | § | |
| **NAVISTAR, INC.** | § | |
| **NAVISTAR INTERNATIONAL** | § | |
| **CORPORATION** | § | |
| **IC BUS, LLC, and** | § | |
| **IC BUS OF OKLAHOMA, LLC** | § | |
| **Defendants** | § | |

_____

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs the **ESTATE OF GABRIEL MIRANDA, JR., MARIA FUENTES, GABRIEL MIRANDA, Sr., ALEXANDRIA SUZANNE DELEON, REUBEN ANTONIO DELEON III, and JON HIDALGO DOE** on behalf of themselves and all others similarly situated, being the "Class Members" to file this their "Plaintiffs' Original Complaint" as follows:

## PREAMBLE

*Failed or Non-Existent Safety Measures of School Bus*
*cause death of 13 year old.*

*On November 14, 2016, Gabriel Miranda, Jr., age 13, fell, or was pushed, out of the emergency door exit of a school bus traveling at approximately 65 mph. This is a suit for damages stemming from the negligent design and manufacture of the school bus which resulted in Failed or Non-Existent Safety Measures, causing the death of Littler Gabriel.*

## A.    <u>NATURE OF SUIT</u>

1.      At all times relevant to this proceeding, Plaintiff Little Gabriel (defined hereafter) was a thirteen year old attending Harlingen CISD (defined hereafter). Riding a school bus, carrying Little Gabriel and other classmates on a field trip, Little Gabriel  fell, or was pushed, out of the emergency door exit of the school bus he was on, which was traveling at approximately 65 mph. Little Gabriel did not survive.

## B. <u>JURISDICTION and VENUE</u>

2.       The jurisdiction of this Court is in accordance with the diversity of citizens of different states and an amount in controversy of over $75,000.00 pursuant to 28 U.S. Code § 1332**.**

3.      Venue is proper in the Southern District of Texas (McAllen Division) because all the actions of the Defendants manifested into horror in Hidalgo County, Texas, which is within the McAllen Division of the Southern District of Texas in the United States Federal District Courts.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                    2

## C.  PARTIES AND SERVICE

4.     Plaintiff **ESTATE OF GABRIEL MIRANDA, JR.** ("Estate" or "Little Gabriel") was formed under the laws of the State of Texas with regards to Plaintiff Little Gabriel, who resided in the State of Texas, was the son of Plaintiffs Gabriel Miranda, Sr. and Maria Fuentes, and was the brother to Plaintiffs Alexandra Suzanne Deleon, Reuben Antonio Deleon III, and Jon Hidalgo Doe.

5.     Plaintiff **MARIA FUENTES** ("Maria") is an individual residing in the State of Texas, was the mother of Plaintiff Little Gabriel, is married to Plaintiff Gabriel Miranda, Sr., and is the mother of Plaintiffs Alexandra Suzanne Deleon, Reuben Antonio Deleon III, and Jon Hidalgo Doe.

6.     Plaintiff **GABRIEL MIRANDA, Sr.** ("Gabriel") is an individual residing in the State of Texas, was the father of Plaintiff Little Gabriel, is married to Plaintiff Maria, and is the father of Plaintiff Jon Hidalgo Doe.

7.     Plaintiff **ALEXANDRA SUAZNNE DELEON** ("Alexandria") is an individual residing in the State of Texas, was the sister to Plaintiff Little Gabriel, and is the sister to Plaintiffs Reuben Antonio Deleon III and Jon Hidalgo Doe.

8.     Plaintiff **REUBEN ANTONIO DELEON III** ("Reuben") is an individual residing in the State of Texas, was a brother to Plaintiff Little Gabriel, and is a brother to Plaintiffs Alexandria and Jon Hidalgo Doe.

9.      Plaintiff **JON HIDALGO DOE** ("JDoe") (at the time the Little Gabriel's Death (defined hereafter) was a ten year old minor residing in the State of Texas, was a brother to Plaintiff Little Gabriel, and is a brother to Plaintiffs Reuben and Alexandria. This claim for relief by Plaintiff JDoe is being brought by Plaintiffs Maria and Gabriel, as the *Next Friends* of Plaintiff JDoe.

10.      Defendant **NAVISTAR, INC.** ("Navistar") is an out of state corporation registered and doing business in the State of Texas but not having a principal place of business in the State of Texas and may be served with summons through its registered agent for service of process as follows:

**NAVISTAR, INC.**
**c/o CT Corporation System**
**1999 Bryan St #900**
**Dallas, Texas 75201**

This court has jurisdiction over Defendant Navistar in accordance with Section 17.042 of the Texas Civil Practice and Remedies Code because Defendant Navistar's acts constituting doing business in the State of Texas include but are not limited to the following:

(1)      contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

        (2)       committed a tort in whole or in part in this state; or

        (3)       recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Further, as a result of such actions, Defendant Navistar has availed itself subject to jurisdiction in Texas, which would be reasonable under the circumstances and would not be violative of any constitutional right of fairness.

    11.    Defendant **NAVISTAR INTERNATIONAL CORPORATION** ("Navistar IC") is an out of state corporation doing business in the State of Texas but not having a principal place of business in the State of Texas and may be served with summons through the Texas Secretary of State in accordance with Section 17.044(c) of the Texas Civil Practice and Remedies Code by providing duplicate copies of the required summons to the Texas Secretary of State as follows, who shall then forward such summons to Defendant Navistar IC at the address below:

**NAVISTAR INTERNATIONAL CORPORATION**
**c/o Texas Secretary of State**
**Service of Process Secretary of State**
**James E. Rudder Building**
**1019 Brazos, Room 105**
**Austin, Texas 78701**

***FOR FURTHER SERVICE UPON:***

**Navistar International Corporation**
**Attn: Curt A. Kramer, Senior Vice-President & General Counsel**
**2701 Navistar Drive**
**Lisle, Illinois 60532**
**331-332-5000**

**PLAINTIFFS' ORIGINAL COMPLAINT**                    5

This court has jurisdiction over Defendant Navistar IC in accordance with Section 17.042 of the Texas Civil Practice and Remedies Code because Defendant Navistar IC's acts constituting doing business in the State of Texas include but are not limited to the following:

(1)     contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2)     committed a tort in whole or in part in this state; or

(3)     recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Further, as a result of such actions, Defendant Navistar IC has availed itself subject to jurisdiction in Texas, which would be reasonable under the circumstances, and would not be violative of any constitutional right of fairness.

12.     Defendant **IC BUS LLC** ("IC-Bus") is an out of state corporation registered and doing business in the State of Texas but not having a principal place of business in the State of Texas and may be served with summons through its registered agent for service of process as follows:

**IC BUS LLC**
**c/o CT Corporation System**
**1999 Bryan St #900**
**Dallas, Texas 75201**

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                       6

This court has jurisdiction over Defendant IC-Bus in accordance with Section 17.042 of the Texas Civil Practice and Remedies Code because Defendant IC-Bus's acts constituting doing business in the State of Texas include but are not limited to the following:

(1)     contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2)     committed a tort in whole or in part in this state; or

(3)     recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Further, as a result of such actions, Defendant IC-Bus has availed itself subject to jurisdiction in Texas, which would be reasonable under the circumstances, and would not be violative of any constitutional right of fairness.

13.     Defendant **IC BUS OF OKLAHOMA, LLC** ("IC-BusOK") is an out of state corporation doing business in the State of Texas but not having a principal place of business in the State of Texas and may be served with summons through the Texas Secretary of State in accordance with Section 17.044(c) of the Texas Civil Practice and Remedies Code by providing duplicate copies of the required summons to the Texas Secretary of State as follows, who shall then forward such summons to Defendant IC-BusOK at the address below:

**IC BUS OF OKLAHOMA, LLC**
**c/o Texas Secretary of State**
**Service of Process Secretary of State**
**James E. Rudder Building**
**1019 Brazos, Room 105**
**Austin, Texas 78701**

## *FOR FURTHER SERVICE UPON:*

**IC BUS OF OKLAHOMA, LLC**
**c/o The Corporation Trust, Registered Agent**
**Corporation Trust Center**
**1209 Orange Street**
**Wilmington, Delaware 19801**

This court has jurisdiction over Defendant IC-BusOK in accordance with Section 17.042 of the Texas Civil Practice and Remedies Code because Defendant IC-BusOK's acts constituting doing business in the State of Texas include but are not limited to the following:

(1)    contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2)    committed a tort in whole or in part in this state; or

(3)    recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Further, as a result of such actions, Defendant IC-BusOK has availed itself subject to jurisdiction in Texas, which would be reasonable under the circumstances, and would not be violative of any constitutional right of fairness.

**PLAINTIFFS' ORIGINAL COMPLAINT**        8

### D.   GENERAL BACKGROUND

#### *Welcoming Little Gabriel*

14.     Although the temperature in Richmond, Texas reached a chilly 36 degrees on the day Plaintiff Little Gabriel was born (December 28, 2002), Little Gabriel greeted his new world with a smile that would warm the heart of everyone.

15.     Plaintiff Little Gabriel weighed 6 pounds, 5 ounces at birth and was perfect in every possible way.

16.     Little Gabriel's birth gave tremendous joy not only to his mother and father (being Plaintiffs Maria and Gabriel) but also to his grandparents, uncles, aunts, numerous cousins, brother, and sister.

17.     Little Gabriel's life at home was a world of excitement and joy, filled with countless hugs to and from his family.

#### *School Days*

18.     From pre-kindergarten through fifth grade, Plaintiff Little Gabriel attended Travis Elementary School within the HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT ("Harlingen CISD"). Science and Music were Little Gabriel's favorite classes, with David Garza being his favorite teacher at Travis Elementary School. Perhaps Mr. Garza was one of the reasons why music would become such an important part of Little Gabriel's life.

19.     For sixth grade in 2013, Plaintiff Little Gabriel moved up to Vernon Middle School within Harlingen CISD, which would be the last school Little Gabriel would ever attend in his young life.

20.     At Vernon Middle School, Little Gabriel studied hard. As of the second week in November 2016, Little Gabriel had a grade of 100 in each of the following four of his classes:

> Science;
> American history;
> School band; and
> Physical education.

21.     Plaintiff Little Gabriel's love for music also continued to blossom.  Little Gabriel joined the Vernon Middle School Band and learned how to play the baritone saxophone and saxophone.

22.     One of Little Gabriel's favorite songs was the 1946 contemporary pop hit *Beyond the Sea* as arranged for the 2003 animated Disney movie *Finding Nemo.*

23.     Little Gabriel had music everywhere in his life.  He would *Google* songs he liked, download the respective sheet music, and then sound out the notes on his saxophone.

24.     Whether pop hits from today to country, Tex-Mex, jazz classics, Beethoven, Bach, or hits from the 50s through 70s, Little Gabriel loved them all.

25.     During the week of November 7, 2016, Little Gabriel's hours of practice on the baritone saxophone paid off as he was awarded "first chair" in the Vernon Middle School band. Attached hereto as <u>Exhibit "1</u>" and incorporated herein by reference is Little Gabriel smiling proudly in his band uniform.

26.     So overjoyed with his band participation, Little Gabriel even designed a t-shirt ("Band T-Shirt") for the Vernon Middle School Band— "*Free Hugs For Everyone*" surrounding a cute alien animal.

### The Day the Music Died

27.     November 14, 2016 was a Monday. Plaintiff Little Gabriel awoke early, excited about his upcoming field trip. Little Gabriel and his classmates from Vernon Middle School would be going to visit The University of Texas Rio Grande Valley Campus ("Field Trip").

28.     Being just a few miles away, Plaintiff Little Gabriel and his class would board Harlingen CISD school buses for the quick trip to Edinburg.

29.     Although Plaintiff Little Gabriel was only in the 8th grade, thoughts of college were not far away. Little Gabriel had already taken early education engineering courses at Texas State Technical College as a mean to obtain additional certificates or degrees upon his high school graduation.

30.     On the morning of November 14, 2016, Plaintiff Little Gabriel specifically reminded his mother (Plaintiff Maria) to be sure and order the Band T-Shirts that Little Gabriel had designed.

31.     Plaintiff Maria had no idea that her discussion with Plaintiff Little Gabriel that morning about the Band T-Shirt would be the last words she ever spoke with her precious son.

32.     Plaintiff Little Gabriel and 40 others from his class at Vernon Middle School boarded school bus #118 ("Bus #118") which is owned and operated by Harlingen CISD.

33.     Before boarding Bus #118 for the Field Trip, Plaintiff Little Gabriel was informed that he had been selected to play a "solo" piece at an upcoming band performance.

34.     Little Gabriel and some of his friends elected to sit at the rear of the Bus #118 for the Field Trip.

35.     By all accounts, the students on Bus #118 were boisterous and happy as they left on the Field Trip.

36.     However, at approximately 9:45:02 a.m. Monday, November 14, 2016, Plaintiff Little Gabriel fell, or was pushed, out of the emergency exit door of Bus #118 ("EEx. Door").

37.     With Bus #118 traveling at approximately 65 miles per hour, there was little chance Little Gabriel would survive such a fall (hereafter, "Little Gabriel's Fall").

38.     Sheriff's Deputy James Prado of the Hidalgo County Sheriff's department was one of the first law enforcement personnel to arrive on the scene. The description of what occurred next is taken verbatim from Deputy Prado's incident report:

> "On Monday, November 14, 2016, Hidalgo Co. Sheriff's Deputy James Prado #2216 responded to north of Canton Road on U.S. 281, regarding a child who fell out of a school bus on the highway.
>
> -      Deputy Prado moved north from Canton Road on the northbound 281 frontage road, onto the on ramp.
>
> -      Deputy Prado moved forward towards the end of the on ramp and observed a small blue colored passenger car; stationary facing north.
>
> -      Deputy Prado saw a young man on his knees, without a shirt and appeared to be holding another individual in his arms.
>
> -      Deputy Prado provided dispatch with the location and had also observed a school bus (#38) parked on the shoulder of the roadway, several yards away.
>
> -      Deputy Prado ran towards to the two people and found a young boy lying upward on the man's lap.

- A large amount of blood was exiting from the back of the boy's head, while man appeared to have removed his t-shirt to wrap it behind the boy's head.

- The man told Deputy Prado that the boy wasn't breathing and had no pulse.

- Deputy Prado found blood around the boy's mouth and on the man helping the boy.

- Deputy Prado put on his latex rubber gloves, to start checking the boy's vital signs.

- Deputy Prado noticed the boy's chest wasn't rising and wouldn't respond to the man as he kept talking to the boy.

- A female individual approached Deputy Prado and said there were three buses that were parked further up from the scene.

- The female said she heard a young girl inside bus #38 scream and had said the boy fell out of the bus.

- Deputy Prado ran to his patrol unit, to get his medical gear bag.

- Deputy Prado ran back to try and provide treatment for the boy.

- Deputy Prado told the man to help him lay the boy down flat on the ground, so CPR could be provided, in which his body was adjusted so he could lie down.

- Deputy Prado saw a female Edinburg Police Officer arrive to assist and she told to start applying chest compressions on the boy.

- Deputy Prado checked his medical bag and wasn't able to find an item to help the boy breath.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                14

- Shortly afterwards, several Edinburg Police Officers arrived on the scene.

- Several Edinburg Firefighters had also arrived to provide treatment for the boy.

- Deputy Prado identified the female as [*witness one*] who said she was on one of the school buses (#38) and was chaperoning the students in the bus.

- [*Witness one*] said she was with the Harlingen School District, but wasn't sure exactly how the boy fell out of the bus.

- [*Witness one*] added that the boy's name was Gabriel, but didn't know his grade or age.

- Deputy Prado contacted the male individual, helping the boy as [witness two].

- [Witness two] said he was driving northbound on Highway 281, when he saw the young boy lying on the ground and stopped to help him.

- [Witness two] said he saw the boy was bleeding a lot from the back of his head.

- [Witness two] told Deputy Prado that he took off his shirt and wrapped it up, so he could try and stop the bleeding on the boy's head.

- [Witness two] said he didn't know who the boy was, but that he had to do something."

39.     Sheriff's Deputy Jose Lopez of the Hidalgo County Sheriff's department arrived at the scene to assist Deputy Prado.  Deputy Lopez noted:

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                    15
tpg 2018.11.13

"On November 14, 2016 at about 0947 hours I Hidalgo County Sheriff's Office Deputy Jose Lopez #4040 was dispatched North of Freddy Gonzalez Road on Expressway 281, Edinburg, Texas in reference to Assist Agency Report. Dispatch advised that a child possibly fell off a school bus.

- Arrived at location and observed a school bus stationary north of Sprague Road on Expressway 281.

- Observed Edinburg Fire Department at location.

- Proceeded to assist with traffic control by placing my unit several hundred feet south from the scene.

- Observed other Emergency units and Edinburg Police units arrive at location.

- Resumed patrol.

- No further action taken."

40.     Emergency personnel raced Plaintiff Little Gabriel to Doctors Hospital at Renaissance in Edinburg.

41.     Plaintiff Gabriel was at the house with Maria that morning, and they both raced out of their home with no real idea of what was happening to their son, Plaintiff Little Gabriel.

42.     By the time Maria and Gabriel finally arrived at Doctors Hospital at Renaissance in Edinburg, Little Gabriel had been pronounced dead (hereafter, "Little Gabriel's Death").

43.     Hundreds of family members and friends would gather to give their final farewells to Little Gabriel.

44.     To ensure that Little Gabriel's plans for his Band T-Shirt came true, Plaintiffs Maria and Gabriel ordered t-shirts made with Little Gabriel's shirt design. Plaintiffs Maria and Gabriel then donated the Band T-Shirts to the Vernon Middle School Band.

***Expectations and Representations of Safety as to Bus #118***

45.     Bus #118 was designed, manufactured, and made available for purchase in the State of Texas by Defendants.

46.     As publicly represented by Defendants:

### SAFETY IS ALWAYS # 1

**When it comes to safety, we have one goal-to build the safest most reliable vehicles on the road. We go to great lengths to identify, develop, and integrate the latest technology and design elements into our vehicles, because our reputations, and in many cases, our families are riding on them.**
**…**
**If technology exists to keep your driver and passengers safer, we'll find a way to integrate it into our vehicles.**

47.     When Plaintiff Little Gabriel boarded Bus #118 on November 14, 2016, Plaintiffs Maria and Gabriel, Plaintiff Little Gabriel, and all the other Plaintiffs, believed that Bus #118 would safely transport Little Gabriel to, and from, the Field Trip.

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                 17
tpg 2018.11.13

48.     Each of the Plaintiffs expected that Plaintiff Little Gabriel would be back at home later that day, playing music, and getting ready for another day of his life.

49.     Little did Plaintiffs' know that their expectations of the safety of Bus #118 were based on hollow representations and warranties of the Defendants, made in a concerted effort to do nothing more than to generate sales and profit from the sale of Defendants' busses.

### *The Failed or Non-Existent Safety Measures of Bus #118.*

50.     By all accounts presently know by Plaintiffs, Bus #118 failed to provide the following safety measures, any one of which could have prevented Plaintiff Little Gabriel's Death:

    (a)     an emergency exit door that, under any circumstances could not be opened, by anyone for any reason while traveling at speeds of 60, 50, or even 40 mph;

    (b)     an emergency exit door that could not be opened by something, or someone, falling against the door;

    (c)     an emergency exit door that could not be opened by anyone (especially students) except in a true, emergency situation;

    (d)     electronic warning systems and alarms that would properly and sufficiently alert the driver, and all riders of the bus, that someone, or something, was attempting to open the emergency exit door (hereafter, "Warning Systems");

(e)     Warning Systems that would be audible to all on the bus;

(f)     Warning Systems that would provide the driver on the bus with a real time, video feed of the emergency exit door;

(g)     Warning Systems that would, at all times, be visible to the driver of the bus;

(h)     Warning Systems that would be triggered in a timely and sufficient manner, allowing the driver of the bus to take emergency actions to ensure that the emergency exit door was being opened only in a true emergency;

(i)     automatic locking devices within the emergency exit door that, under any circumstances, would prevent anyone, for any reason, from opening the emergency exit door while the bus was traveling at speeds of 60, 50, or even 40 mph;

(j)     an automatic, or manual override available to the driver of the bus, which would lock the emergency exit door if the emergency exit door was being opened while the bus was traveling at speeds of 60, 50, or even 40 mph;

(i)     an emergency exit door that could not be opened merely by students jostling with the interior handle of the emergency exit door; and

(j)     seat belts for the students.

The foregoing, as well as additional measures which may be identified during discovery of this matter, shall hereafter be referred to as the "Failed or Non-Existent Safety Measures."

51.     There was no emergency on Bus #118 when the EEx. Door was opened, and Plaintiff Little Gabriel fell out.

52.     But for the non-existence of, or the improper implementation or working condition of, any one of the Failed or Non-Existent Safety Measures, Plaintiff Little Gabriel would be alive today, with his family, planning for a long future.

### *Defendants' actions in concert.*

53.     Each of the Defendants contributed to the design, manufacture, and placement of Bus #118 into the distribution sale system within the State of Texas and the United States.

54.     While Defendants might be different corporate entities, each Defendant is related to the other, and each shares in the responsibility for the Failed or Non-Existent Safety Measures resulting in Plaintiff Little Gabriel's Death.

55.     The Failed or Non-Existent Safety Measures are well known by each of the Defendants, and each of the Defendants' generated sales revenue and profits from the sale of school busses.

56.     Upon information and belief, the Failed or Non-Existent Safety Measures are not unique to Bus #118, but exist on perhaps hundreds, if not thousands, of school busses designed, manufactured, and placed into the sale distribution system of the State of Texas and within the United States by Defendants.

57.     Upon information and belief, Plaintiff Little Gabriel's Death is but one death and only one incident of numerous injuries, caused annually by the Failed or Non-Existent Safety Measures of Defendants.

58.     Upon information and belief, the Failed or Non-Existent Safety Measures are not in compliance with laws and regulations of the State of Texas and the United States.

### *Duties of Care, Representations, and Warranties*

59.     Each Defendant had a duty of care to each of the Plaintiffs and the Class Members with regard to the safety of the school busses designed and manufactured by Defendants. The existence of the Failed or Non-Existent Safety Measures was a material breach of such duty of care and caused Plaintiff Little Gabriel's Death, even constituting gross negligence.

60.     Each Defendant also made specific representations as to the safety of the school busses designed and manufactured by Defendants. The existence of the Failed or Non-Existent Safety Measures was a material breach of such representations and caused Plaintiff Little Gabriel's Death.

61.     The actions of Defendants also created expressed and implied warranties as to the safety of the school busses designed and manufactured by Defendants. The

existence of the Failed or Non-Existent Safety Measures was a material breach of such expressed and implied warranties and caused Plaintiff Little Gabriel's Death.

62.     By not ensuring against the Failed or Non-Existent Safety Measures of Bus #188, as well as other school busses designed and manufactured by Defendants throughout the United States, Defendants allowed a defective product to into the stream of commerce with the State of Texas and throughout the United States, which caused Plaintiff Little Gabriel's Death.

### *Bad Faith and Intentional acts to Harm*

63.     Defendants' design, manufacturer, and placement into the stream of commerce in Texas and throughout the United States of school busses with Failed or Non-Existent Safety Measures constitute acts and omissions made in bad faith, willfulness, malice, and reckless disregard for the true safety of passengers of school busses.

64.     Because of Defendants' awareness of the Failed or Non-Existent Safety Measures as to the school busses designed, manufactured, and placed into the stream of commerce in Texas and throughout the United States, Defendants' actions are deemed to be intentional acts to harm others.

### *Harm to Plaintiffs*

65.     Plaintiff Little Gabriel lost his life as a result of the Failed or Non-Existent Safety Measures as to Bus #118. All the wonders, past and present, that Little Gabriel was to experience in the future and which would have shared with others, are gone forever. Had Plaintiff Little Gabriel survived, Plaintiff Little Gabriel would have been entitled to bring this request for relief. In his place, now stands the Plaintiff Estate.

66.     Plaintiff Little Gabriel's Death (resulting from the Failed or Non-Existent Safety Measures as to Bus #118) has caused, and is expected to continue to cause, serious and permanent physical pain, emotional, mental, and economic harm to each of the Plaintiffs.

67.     Plaintiffs Maria and Gabriel were devoted and loving parents of Plaintiff Little Gabriel.  As a result of  the Failed or Non-Existent Safety Measures as to Bus #118 which caused Little Gabriel's Death, Plaintiffs Maria and Gabriel have suffered the past and future loss of Little Gabriel's love, care, maintenance, support, services, advice, counsel, companionship, and society and will suffer past and future emotional pain, mental anguish, torment, and suffering as a result of Little Gabriel's most untimely death. Such harm was suffered by Plaintiffs Maria and Gabriel in the past and will be suffered in the future for the rest of their respective lives.

68.    Still filled with unbelievable grief as to the death of their precious son and approaching the second anniversary of his death, Plaintiffs Maria and Gabriel arranged for a public display of love and remembrance as shown in Exhibit B, attached hereto and incorporated herein by reference.

69.    Plaintiff Little Gabriel's sister and brothers were devoted and loving siblings of Little Gabriel.  As a result of  the Failed or Non-Existent Safety Measures as to Bus #118 which caused Little Gabriel's Death, Plaintiffs Alexandria, Reuben, and JDoe have suffered the past and future loss of Little Gabriel's love, care, maintenance, support, services, advice, counsel, companionship, and society; and will suffer past and future emotional pain, mental anguish, torment, and suffering as a result of Little Gabriel's most untimely death. Such harm was suffered by Plaintiffs Alexandria, Reuben, and JDoe in the past and will be suffered in the future for the rest of their respective lives.

### *Collective Action Allegations*

70.    Considering the Failed or Non-Existent Safety Measures caused by Defendants, it is likely that there are other students of in the State of Texas and throughout the United States who have suffered, and are still suffering, as a result of similar actions of the Defendants. As such, Plaintiffs are representative of the Class of Members.

71.     Pursuit of this lawsuit on behalf of Plaintiffs and the Class Members is appropriate under Rule 23(a) of the Federal Rules of Civil Procedure because:

> (1)     the class is so numerous that joinder of all members is impracticable;
>
> (2)     there are questions of law or fact common to the class;
>
> (3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)     the representative parties will fairly and adequately protect the interests of the class.

72.     Further, pursuit of this matter as a class action for the Class of Members is appropriate under Rule 23(b) of the Federal Rules of Civil Procedure because:

> (1)     prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A)     inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or…
>
> (2)     the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3)     the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

73.     As a result of Defendants' Failed or Non-Existent Safety Measures, Plaintiffs were forced to engage an attorney and pursue this action to redress such wrongs.

74.     All conditions precedent to Plaintiffs bringing these claims have been met.

### E.  PLAINTIFFS' CAUSES OF ACTION

75.     Plaintiffs incorporates by reference the facts set forth in Article D: GENERAL BACKGROUND hereof.

### COUNT ONE: WRONGFUL DEATH AND SURVIVOR CAUSE OF ACTION

76.     As a direct and proximate result of the negligent acts and omissions of the Defendants (as such acts and omissions are described in Article D of this complaint), Plaintiff Little Gabriel suffered injuries and damages resulting in Little Gabriel's Death. Such acts and omissions of Defendants, therefore, entitle the Plaintiffs to seek relief pursuant to the Texas Wrongful Death Statute, the Texas Civil & Practices & Remedies Code, and the Texas Survival Statutes, under which Plaintiffs now sues.

77.     For all the harm suffered by Plaintiffs and caused by the wrongful death of Little Gabriel, Plaintiffs seek damages of a fair and reasonable sum, against each of the Defendants.

## COUNT TWO: INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS

78.     The acts and omissions of Defendants (as such acts are described in Article D of this Complaint):

(a)     were intentionally and willfully undertaken by Defendants;

(b)     were, if not intentional, certainly reckless with no regard for the outcome;

(c)     were extreme and outrageous in nature;

(d)     have caused emotional distress upon Plaintiffs; and

(e)     such emotional stress has been extreme.

79.     As a result, Defendants have intentionally inflicted emotional distress upon Plaintiffs, and Defendants, therefore, are liable to Plaintiffs for all actual and consequential damages, for which Plaintiffs now sue.

## COUNT THREE: BREACH OF EXPRESSED REPRESENTATIONS

80.   The acts and omissions of Defendants (as such acts are described in Article D of this Complaint) violate the express representations made by Defendants and resulted in Plaintiff Little Gabriel's Death.

81.   As a result of the foregoing, Defendants have caused, serious and permanent physical pain, emotional, mental, and economic harm to each of the Plaintiffs resulting from Plaintiff Little Gabriel's Death.

82.   Defendants, therefore, are liable to Plaintiffs for all such actual and consequential damages, for which Plaintiffs now sue.

## COUNT FOUR: BREACH OF EXPRESSED WARRANTIES

83.   The acts and omissions of Defendants (as such acts are described in Article D of this Complaint) violate the expressed warranties made by Defendants and resulted in Plaintiff Little Gabriel's Death.

84.   As a result of the foregoing, Defendants have caused, serious and permanent physical pain, emotional, mental, and economic harm to each of the Plaintiffs resulting from Plaintiff Little Gabriel's Death.

85.   Defendants, therefore, are liable to Plaintiffs for all such actual and consequential damages, for which Plaintiffs now sue.

## COUNT FIVE: BREACH OF IMPLIED WARRANTIES

86.   The acts and omissions of Defendants (as such acts are described in Article D of this Complaint) violate the implied warranties made by Defendants and resulted in Plaintiff Little Gabriel's Death.

87.   As a result of the foregoing, Defendants have caused, serious and permanent physical pain, emotional, mental, and economic harm to each of the Plaintiffs resulting from Plaintiff Little Gabriel's Death.

88.   Defendants, therefore, are liable to Plaintiffs for all such actual and consequential damages, for which Plaintiffs now sue.

## COUNT SIX: NEGLIGENCE

89.   The acts and omissions of Defendants (as such acts are described in Article D of this Complaint) violate the duties of care owed by Defendants to Plaintiffs, which resulted in Plaintiff Little Gabriel's Death.

90.   As a result of the foregoing, Defendants have caused, serious and permanent physical pain, emotional, mental, and economic harm to each of the Plaintiffs resulting from Plaintiff Little Gabriel's Death.

91.   Defendants, therefore, are liable to Plaintiffs for all such actual and consequential damages, for which Plaintiffs now sue.

## COUNT SEVEN: GROSS NEGLIGENCE

92.    The acts and omissions of Defendants (as such acts are described in Article D of this Complaint) violate the duties of care owed by Defendants to Plaintiffs to such an extreme that such acts and omissions constitute gross negligence, which resulted in Plaintiff Little Gabriel's Death.

93.    As a result of the foregoing, Defendants have caused, serious and permanent physical pain, emotional, mental, and economic harm to each of the Plaintiffs resulting from Plaintiff Little Gabriel's Death.

94.    Defendants, therefore, are liable to Plaintiffs for all such actual and consequential damages, for which Plaintiffs now sue.

## COUNT EIGHT: DEFECTIVE PRODUCT

95.    The acts and omissions of Defendants (as such acts are described in Article D of this Complaint) resulted in Defendants' entry of a defective product into the stream of commerce of Texas and throughout the United States, which resulted in Plaintiff Little Gabriel's Death.

96.    As a result of the foregoing, Defendants have caused, serious and permanent physical pain, emotional, mental, and economic harm to each of the Plaintiffs resulting from Plaintiff Little Gabriel's Death.

97.     Defendants, therefore, are liable to Plaintiffs for all such actual and consequential damages, for which Plaintiffs now sue.

## COUNT NINE: STRICT TORT LIABILITY

98.     The acts and omissions of Defendants (as such acts are described in Article D of this Complaint) constitute acts and omissions constituting strict tort liability, which resulted in Plaintiff Little Gabriel's Death.

99.     As a result of the foregoing, Defendants have caused, serious and permanent physical pain, emotional, mental, and economic harm to each of the Plaintiffs resulting from Plaintiff Little Gabriel's Death.

100.    Defendants, therefore, are liable to Plaintiffs for all such actual and consequential damages, for which Plaintiffs now sue.

## COUNT TEN: STRICT PRODUCTS LIABILITY

101.    The acts and omissions of Defendants (as such acts are described in Article D of this Complaint) constitute acts and omissions constituting strict products liability, which resulted in Plaintiff Little Gabriel's Death.

102.    As a result of the foregoing, Defendants have caused, serious and permanent physical pain, emotional, mental, and economic harm to each of the Plaintiffs resulting from Plaintiff Little Gabriel's Death.

103.   Defendants, therefore, are liable to Plaintiffs for all such actual and consequential damages, for which Plaintiffs now sue.

## COUNT ELEVEN: CONSPIRACY

104.   The acts and omissions of Defendants (as such acts are described in Article D of this Complaint) constitute acts and omissions of the Defendants acting in concert with the intent to harm others, which resulted in Plaintiff Little Gabriel's Death.

105.   As a result of the foregoing, Defendants have caused, serious and permanent physical pain, emotional, mental, and economic harm to each of the Plaintiffs resulting from Plaintiff Little Gabriel's Death.

106.   Defendants, therefore, are liable to Plaintiffs for all such actual and consequential damages, for which Plaintiffs now sue.

## COUNT TWELVE: EXEMPLARY DAMAGES

107.   The acts and omissions of Defendants were intentionally, maliciously, willfully, or recklessly executed against Plaintiff Little Gabriel and the other Plaintiffs, which resulted in Plaintiff Little Gabriel's Death.

108.   As such, Defendants are liable for exemplary damages allowed by Texas jurisprudence and the Texas Civil Practice and Remedies Code, for which Plaintiffs now sue in the amount of $100,000,000.00.

## COUNT THIRTEEN: POST JUDGMENT INTEREST

109.   Plaintiffs also request pre and post judgment interest as may be allowed by Texas law.

## COUNT FOURTEEN: ATTORNEYS' FEES

110.   Plaintiffs should be awarded reasonable and necessary attorneys' fees incurred in relation to the prosecution of this lawsuit.

## F.   REQUEST FOR JURY

111.   Plaintiffs hereby exercise their right in this proceeding to demand that a jury be empaneled, and, that the foregoing causes of actions and requests for relief be presented to such jury for resolution, with any required such fee being tendered herewith.

## G.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs the ESTATE OF GABRIEL MIRANDA., JR. MARIA FUENTES, GABRIEL MIRANDA, Sr., ALEXANDRIA SUZANNE DELEON, REUBEN ANTONIO DELEON III, and JON HIDALGO DOE pray that summons be issued; that Defendants be cited to appear, that the Class of Members of be certified; and that upon final trial hereof, that judgment be entered in favor of Plaintiffs and the Class of Members for the damages set forth herein; that Plaintiffs be reimbursed their reasonable and necessary

attorneys' fees required to bring this matter; that all costs of Court be taxed against

Defendants; and that Plaintiffs have such further and other relief, general and special,

both at law or in equity, to which each may show themselves to be justly entitled.

    Respectfully submitted,

                  GORMAN LAW FIRM, pllc

By: _____
                  Terry P Gorman, Esq.
                  Texas Bar No. 08218200
                  tgorman@school-law.co
                  Chigozie F. Odediran, Esq.
                  Texas Bar No. 24098196
                  codediran@school-law.co
            901 Mopac Expressway South, Suite 300
            Austin, Texas 78746
            Telephone: (512) 320-9177
            Telecopier: (512) 597-1455
            **COUNSEL FOR**
            **PLAINTIFFS the ESTATE OF GABRIEL**
            **MIRANDA, Jr., DECEASED, MARIA**
            **FUENTES, GABRIEL MIRANDA, Sr.,**
            **ALEXANDRIA SUZANNE DELEON,**
            **REUBEN ANTONIO DELEON III, and**
            **JON HIDALGO DOE**

**EXHIBIT "A"**
**to**
**PLAINTIFFS' ORIGINAL COMPLAINT**



**EXHIBIT "B"**
**to**
**PLAINTIFFS' ORIGINAL COMPLAINT**

