IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| GABRIEL MIRANDA, SR., and | § | |
| MARIA FUENTES, Individually | § | |
| and as Representatives of the Estate of | § | |
| GABRIEL MIRANDA, JR., | § | |
| | § | CIVIL ACTION NO. 7:18-CV-00353 |
| v. | § | JURY |
| | § | |
| NAVISTAR, INC., NAVISTAR | § | |
| INTERNATIONAL CORPORATION, | § | |
| IC BUS, LLC, AND IC BUS OF | § | |
| OKLAHOMA, LLC | § | |

**DEFENDANTS NAVISTAR, INC., NAVISTAR INTERNATIONAL CORPORATION, IC BUS, LLC, AND IC BUS OF OKLAHOMA, LLC'S MOTION TO COMPEL**

Defendants Navistar, Inc., Navistar International Corporation, IC Bus, LLC and IC Bus of Oklahoma, LLC ("Defendants") file this Motion to Compel and in support of their Motion would show the Court the following.

**I.   SUMMARY OF THE ARGUMENT**

Plaintiffs filed this lawsuit after their son, Gabriel Miranda, Jr. ("Miranda"), died after he came out of the rear emergency exit door on a school bus that he was riding in to attend a class field trip. Plaintiffs have alleged that the bus was unreasonably dangerous and was defectively designed, manufactured, distributed and/or marketed and have sued Defendants for damages. There is evidence in this case that Miranda committed suicide as he jumped out of the back of the school bus. The coroner reached that conclusion following her review of the investigation of this matter. Whether Miranda committed suicide is key evidence regarding defenses available in this case and is relevant to the claims Plaintiffs have made in this case. Therefore, Defendants have requested that Plaintiffs authorize Defendants to obtain the Call Data Records ("CDRs") related to Miranda's cell phone and to allow Defendants to search Miranda's Google account.

The data from those sources is important to provide information regarding Miranda's state of mind and to demonstrate whether he was contemplating suicide prior to his death. Plaintiffs have refused to provide authorizations for Defendants to obtain that information. Therefore, Defendants request that this Court compel Plaintiffs to provide authorizations for the CDRs and a search of Miranda's Google account.

## II.     FACTUAL BACKGROUND

On November 14, 2016, Miranda, a 13-year-old eighth grader, was riding in a school bus with his classmates to attend a field trip. Based on witness affidavits, at some point during the ride, Miranda got up from his seat on the last row of the bus, opened the emergency exit door, and jumped from the school bus. His fall from the moving school bus resulted in fatal injuries and Miranda was pronounced dead at the hospital later that morning.

Defendants have pled contributory negligence as well as assumption of the risk on the part of Miranda.[1] A key issue in this case is whether Miranda was in the act of committing suicide when he jumped from the moving school bus.

Pursuant to Defendants' request, Plaintiffs have provided the cell phone that was in Miranda's possession at the time of his death and have permitted information from the phone to be downloaded and then examined and analyzed by Defendants' retained expert, Scott Greene of Evidence Solutions, Inc.[2] Defendants have shared all of the information downloaded by Mr. Greene with Plaintiffs.

Mr. Greene has informed Defendants that, in addition to the information he obtained from the cell phone, he needs to review the CDRs from the cell phone provider to be able to have

---

[1] *See* Defendants Navistar, Inc., Navistar International Corporation, IC Bus, LLC, and IC Bus of Oklahoma, LLC's First Amended Answer to Plaintiffs' First Amended Complaint, on file herein.
[2] Mr. Greene's affidavit and curriculum vitae are attached hereto as **Exhibit "A"** and are incorporated herein by reference as if fully set forth at length.

objective information that supports the data collected on the phone.[3]  As Mr. Greene states in his affidavit, the CDRs provide objective information regarding the calls and text messages sent and received, locations where calls or texts were made, information regarding calls that are not captured on the actual cell phone, and information regarding data usage.[4]  For example, the data from the phone itself may only show that there were two text messages sent from a phone in one day, but the CDRs may show that there were actually twenty texts sent from a phone in one day, indicating that information was removed or deleted from the actual cell phone.[5]  Additionally, the CDRs will show how much data was used each day by the phone's user, including Internet browsing as well as app usage.[6]  The information downloaded from the phone shows which apps, including social media apps, were accessed in a day and the amount of data, which can then be compared to the data on the CDRs for verification.[7]

We know from the data collected from the phone that Miranda had an active Google account.  A search of his Google account will provide information regarding his state of mind through the email communications and searches he had prior to his death.

Mr. Greene notes that CDRs provide information that cannot be obtained from the phone itself.[8]  For example, if a cell phone user is called but that call goes to voicemail due to a lack of service or if the phone is off, that call will not be recorded on the phone.[9]  However, that call is recorded on the CDRs.[10]  If a person called another person twenty times in one day, and each time the call went to voicemail, the CDRs would be the only source to determine that those calls

---

3 *See* Scott Greene's affidavit:  Exhibit "A" paragraph 15.
4 *See* Scott Greene's affidavit:  Exhibit "A" paragraph 15.
5 *See* Scott Greene's affidavit:  Exhibit "A" paragraph 16.
6 *See* Scott Greene's affidavit:  Exhibit "A" paragraph 18.
7 *See* Scott Greene's affidavit:  Exhibit "A" paragraph 18.
8 *See* Scott Greene's affidavit:  Exhibit "A" paragraph 19.
9 *See* Scott Greene's affidavit:  Exhibit "A" paragraph 19.
10 *See* Scott Greene's affidavit:  Exhibit "A" paragraph 19.

were made.[11]  In addition to verifying the data on the phone, that information is important in identifying key witnesses in this case, in particular, ones who Miranda interacted with most frequently prior to his death.

Since obtaining the data from the actual cell phone, we now know that Miranda's mother, Plaintiff Maria Fuentes, had access to the phone as she sent text messages from the cell phone after Miranda's death.[12]  Objective verification of the data that is on the cell phone is of paramount importance when there is evidence that a party to the litigation had access to and used the cell phone at issue after Miranda's death.  The CDRs can provide that objective verification for all parties.

Defendants have specifically requested Plaintiffs to agree voluntarily to authorize Defendants to obtain the CDRs and a search of Miranda's Google account.  Defendants sent Plaintiffs an authorization to allow Defendants to obtain the CDRs on July 9, 2019.  Plaintiffs responded that they would only sign an authorization for the CDRs for the date of Miranda's death.  Defendants responded on July 10, 2019, explaining that the CDRs would provide objective evidence regarding the information on the phone and stating that Defendants would agree to limit the CDR records to the date of the accident and one year prior to the date of the accident.  Plaintiffs responded on July 24, 2019, that they could not agree.  Defendants again responded on July 24, 2019 and explained the purpose of the CDRs and agreed to seek only the day of the accident and one month before of the CDR records.  On July 24, 2019, Plaintiffs responded that they could not agree to even one month before and advised that if Defendants wanted the data records, Defendants would need to get the Court's ruling.

Similarly, on October 8, 2019, Defendants provided a Google Account Protocol and an

---

[11] *See* Scott Greene's affidavit:  Exhibit "A" paragraph 19.
[12] The information from Miranda's phone indicates that Maria Fuentes sent texts and/or Kik messages from the phone on December 2, 4, 8, 15, 16, and 18, 2016.

authorization for Google account records of Miranda. After not hearing from Plaintiffs whether they would agree to the Google Account Protocol and authorization, Defendants requested the items again on October 11, 2019. Plaintiffs responded on October 14, 2019 that they would not agree to the discovery of the Google account and the protocol. On October 28, 2019, Defendants' counsel sent a copy of this motion to Plaintiffs' counsel to determine if the parties could reach an agreement. Plaintiffs' counsel responded on October 31, 2019, that she would not agree to produce the requested information and that she is opposed to the motion. As a result, Defendants have filed this Motion seeking assistance from the Court.

### III.    ARGUMENTS AND AUTHORITIES

Federal Rule of Civil Procedure 26(b)(1) outlines the scope of permissible discovery. That rule provides as follows:

> **Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues as state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[13]

Courts construe discovery rules liberally to serve the purpose of discovery: providing parties with information essential to the proper litigation of all relevant facts, eliminating surprise and promoting settlement.[14] The threshold for relevance at the discovery stage is lower than at the trial stage.[15] Unless it is clear that the information sought can have no possible bearing on a party's claim or defense, the request for discovery should be allowed.[16] The party resisting

---

13 *See* FED R. CIV. P. 26(b)(1).
14 *See Ferko v. National Ass'n for Stock Car Auto Racing, Inc..*, 218 F.R.D. 125, 132 (E.D. Tex. 2003)(citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 351 (1978).
15 *See Rangel v. Gonzalez Mascorro,* 274 F.R.D. 585, 590 (S.D. Tex. 2011).
16 *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005).

discovery has the burden of establishing lack of relevance by demonstrating that the requested information does not come within the broad scope of relevance or that the potential harm caused by the discovery would outweigh the ordinary presumption in favor of broad disclosure.[17] Where the relevance is in doubt, the court should be permissive in allowing discovery.[18]

It is important to note that Rule 26(b)(1) clearly states that information that is within the scope of discovery need not be admissible in evidence to be discoverable.[19] Additionally, Rule 26(b)(1) defines the scope of what is discoverable not as any nonprivileged **facts**, but, more broadly, as "any nonprivileged **matter**."(emphasis added).[20] That is, the scope of discovery is not limited simply to facts, but may entail other matters that remain relevant to a party's claims or defenses, even if not strictly fact-based.[21]

In this case, Defendants have pled the defenses of contributory negligence as well as assumption of the risk on the part of Miranda.[22] At issue is whether Miranda's death was the result of his intent to commit suicide. Clearly, information regarding Miranda's state of mind is relevant to Defendants' defenses of contributory negligence and assumption of the risk. As shown above, Mr. Greene's affidavit sets forth the reasons why the CDRs and search of Miranda's Google account are important. As he concludes in his affidavit: "The detailed CDRs are important to my analysis of the cell phone data in this case as they provide objective information regarding the data that is downloaded from the phone."[23] The CDRs and Google account will provide relevant objective data that is important to available defenses in this case as well as claims asserted by Plaintiffs.

---

17 *Id.* at 470-471.
18 *See Rangel*, 274 F.R.D. at 590.
19 *See* FED R. CIV. P. 26(b)(1); *accord Booth v. City of Dallas*, 312 F.R.D. 427, 433 (N.D. Tex. 2015).
20 *See* FED R. CIV. P. 26(b)(1).
21 *See In re Blue Cross Blue Shield*, No. 2:13-CV-20000-RDP, 2015 WL 9694792, at *2 (N.D. Ala. Dec. 9, 2015).
22 *See* TEX. CIV. PRAC. & REM. CODE § 93.001(a)(2).
23 *See* Scott Greene's affidavit: Exhibit "A" paragraph 23.

## IV. CONCLUSION AND PRAYER

Defendants are entitled to have the CDR records and a search of Miranda's Google account. Without an examination of those sources, Defendants do not have all the information and data necessary to properly evaluate Miranda's state of mind and cause of his death, which are clearly relevant to their defenses of contributory negligence and assumption of the risk and Plaintiffs' claims against Defendants. Additionally, Defendants need objective verification of the information that is on the phone.

Defendants Navistar, Inc., Navistar International Corporation, IC Bus, LLC and IC Bus of Oklahoma, LLC respectfully pray that the Court grant Defendants' Motion to Compel Production and order Plaintiffs Gabriel Miranda, Sr. and Maria Fuentes to authorize Defendants to obtain the CDRs and a search of Miranda's Google account and for all other and further relief, both general and special, at law and in equity, to which they may show themselves justly entitled.

Respectfully submitted,

By: */s/ William J. Collins, III*
William J. Collins, III
Texas State Bar No. 04621500
Fed. ID No. 3441
2500 Two Houston Center
909 Fannin Street
Houston, Texas 77010-1003
Telephone: (713) 951-1000
Facsimile: (713) 951-1199
wcollins@sheehyware.com

**ATTORNEY-IN-CHARGE FOR DEFENDANTS NAVISTAR, INC., NAVISTAR INTERNATIONAL CORPORATION, IC BUS, LLC AND IC BUS OF OKLAHOMA, LLC**

**Of Counsel**
SHEEHY, WARE & PAPPAS, PC
Laura S. Favaloro
Fed. ID No. 15581
Texas State Bar No. 00784929
Travis Cade Armstrong
Fed. ID No. 1690801
Texas State Bar No. 24069312

## CERTIFICATE OF CONFERENCE

I hereby certify that the undersigned counsel has conferred with Plaintiffs' counsel in an attempt to resolve the discovery issue presented in this motion. The parties have been unable to reach an agreement regarding the disposition of the motion and Court intervention is required.

                                            */s/ William J. Collins, III*
                                            William J. Collins, III

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel of record in compliance with the Federal Rules of Civil Procedure, on November 8, 2019.

                                            */s/     William J. Collins, III*
                                            William J. Collins, III

3604540_1