IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | |
|---|---|
| GABRIEL MIRANDA, SR. and MARIA FUENTES, Individually and as Representatives of the Estate of GABRIEL MIRANDA, JR., <br><br> Plaintiffs, <br><br> V. <br><br> NAVISTAR, INC., NAVISTAR INTERNATIONAL CORPORATION, IC BUS, LLC, and IC BUS OF OKLAHOMA, LLC, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § C.A. No. 7:18-cv-00353 |

### PLAINTIFFS' OPPOSITION RESPONSE TO DEFENDANTS' <u>MOTION TO COMPEL</u>

Under Fed. R. Civ. P. 26(b), Plaintiffs file their Opposition Response to Defendants' Motion to Compel additional discovery to search deceased Gabriel Miranda, Jr.'s personal and private google account and for Call Data Records ("CDRs") of his cell phone. Defendants' Motion should be denied because the information sought is not relevant and not proportionate to the needs of the case.

### I.   BACKGROUND

This is a product liability automotive design defect case involving a 2011 IC school bus designed and manufactured by Defendants. On November 14, 2016, the

subject bus was carrying middle-school students to a field trip. A little over an hour into the bus ride, 13-year old eighth-grader Gabriel Miranda, Jr. ("Gabriel, Jr.") opened the rear emergency door and fell to his death onto Interstate Highway 69C in Edinburg, Texas.

Although safety technology was available at the time of manufacture, the subject 2011 IC school bus featured a rear emergency exit door that was unlocked (and unlockable) even while the bus was traveling at highway speed and there could be no emergency to open the rear "emergency exit" door.

Plaintiffs assert on the occasion in question, if the rear emergency exit door had been locked, Gabriel Miranda, Jr. would not have been able to open that door. To prevail, Plaintiffs must show that the design defect was a producing cause of Gabriel, Jr.'s death.[1] Defendants counter Plaintiffs' claim with a suicide defense theory. In essence, Defendants assert that no matter what safety technology had been installed, a locked rear emergency exit door would not have prevented Gabriel, Jr.'s death on the occasion in question because he wanted to kill himself. But Plaintiffs say he could not have opened an "emergency exit" door with the bus in motion had it not been defectively designed.

---

[1] Tex. Civ. Prac. & Rem. Code § 82.005(a)(2) ("the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.").

Erron Fox, a driver traveling behind the bus, sheds light that Gabriel, Jr. tried to close the emergency exit door after it was opened:

> "I saw a school bus in front of me and I saw a boy standing by the back emergency door and the door was still closed. The emergency back door then opened wide on the school bus that was from Harlingen ISD. **I then saw a little boy attempt to reach out and close the door.** As he was attempting to close the door, I saw him fall out off the bus. As he rolled over backwards, I saw him bang the back of his head on the roadway as both his arms were above his head almost as if he was covering his head from impact."[2] (emphasis added).

Additionally, there are 40 affidavits of the students in the bus from the Edinburg police report[3] and 131 pages of screen shots, made by the Edinburg police during their investigation, of text messages between Gabriel, Jr. and his ex-girlfriend Emily.

Nevertheless, Defendants requested from Plaintiffs records showing phones calls to and from Gabriel, Jr.'s cell phone and requested to inspect Gabriel, Jr.'s cell phone. Plaintiffs complied.

On June 28, 2019, Plaintiffs produced itemized cell phone records for Gabriel, Jr. from August to December 2016,[4] which showed specific phone numbers of each incoming and outgoing call and the duration of each call.

---

[2] Erron Fox Affidavit and Handwritten Statement, **Exhibit A**, PL Bates 12, 114-117.

[3] Edinburg Police Report - Student Seating Chart, **Exhibit B**, PL Bates 276.

[4] Gabriel, Jr.'s cell phone records, **Exhibit C**, PL Bates 500, 516, 517, 534.

On September 24, 2019, Plaintiffs allowed Defendants' expert Scott Greene unfettered access to Gabriel, Jr.'s cell phone. Numerous text conversations with friends and family were retrieved, along with photos and images. Defendant was then able to compare the Edinburg police's 131 pages of screen shots of texts between Gabriel, Jr. and his ex-girlfriend Emily with what Greene downloaded off the cell phone to see if there were any deleted text messages.

Apparently, Defendants found nothing useful to support their suicide theory or that anything had been deleted after Gabriel, Jr.'s death. Still empty-handed and without any hint of spoliation, Defendants now want to further their speculative fishing expedition into Gabriel, Jr.'s personal and private google account and Call Data Records ("CDRs").[5] Defendants have yet to attempt any other discovery efforts to show Gabriel, Jr. was suicidal at the time he opened the rear emergency exit door. There is no evidence of any prior attempt of suicide by Gabriel, Jr.

## II.   STANDARD FOR DISCOVERY

Fed. R. Civ. P. 26(b)(1) states:

> "Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense **and proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the ***importance of the discovery in resolving the issues***, and whether

---

[5] *See* Defendants' Motion, at 3 (referring to Scott Greene's affidavit, paragraphs 15, 16, 18, 19).

the burden or expense of the proposed discovery outweighs its likely benefit."[6] (emphasis added).

However, "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[7] Below, Plaintiffs will show that Defendants' desired scope of discovery for Call Data Records ("CDRs") from Gabriel, Jr.'s cell phone and access to his google account is not relevant and "fails the proportionality calculation mandated by Rule 26(b)."[8]

## III. ARGUMENT AND AUTHORITIES

To prevail on their Motion to Compel, Defendants must show many or all of the proportionality factors under Rule 26(b)(1) and must certify under Rule 26(g)(1)(B)(iii) that their request is "neither unreasonable nor unduly burdensome or expensive, *considering … prior discovery* in the case…"[9] Defendants have not and cannot satisfy these requirements.

### A. Suicide Is Not Relevant To Any Affirmative Defense.

Defendants assert two affirmative defenses: (1) assumption of the risk and (2) contributory negligence. Neither assumption of the risk nor contributory

---

[6] Fed. R. Civ. P. 26(b)(1).

[7] *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (quotation omitted).

[8] *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 580 (N.D. Tex. 2016).

[9] *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 580 (N.D. Tex. 2016) (citations omitted) (emphasis added).

negligence is a valid defense in this product defect case. Under the facts of this case, suicide is not probative to a contributory negligence defense.

First, Tex. Civ. Prac. & Rem. Code § 93.001, Assumption of the Risk: Affirmative Defense, states:

> "(a) It is an affirmative defense to a civil action for damages for personal injury or death that the plaintiff, at the time the cause of action arose, was: … (2) committing or attempting to commit suicide, and the plaintiff's conduct in committing or attempting to commit suicide was the sole cause of the damages sustained; provided, however, if the suicide or attempted suicide **was caused in whole or in part by a failure on the part of any defendant to comply with an applicable legal standard, then such suicide or attempted suicide shall not be a defense**."[10] (emphasis added).

Assumption of the risk is not a defense in this case. Here, Plaintiffs assert on the occasion in question, if the rear emergency exit door had been locked, Gabriel Miranda, Jr. would not have been able to open that door. Under Tex. Civ. Prac. & Rem. Code § 93.001(a)(2), Defendants cannot assert an assumption of the risk defense because Gabriel, Jr.'s death was caused in whole or part by Defendants' defectively designed unlocked rear "emergency" exit door that could be opened, and was opened, while the bus was under normal operation, moving at highway speed. As designed, the subject bus was defective and unreasonably dangerous. A

---

[10] Tex. Civ. Prac. & Rem. Code § 93.001.

strict liability legal standard is violated; and suicide would not be relevant because assumption of the risk is not a defense.

Second, suicide would not be probative in a product liability case when a misuse is foreseeable.[11] Unquestionably an unlocked door can be opened by a passenger while a bus is traveling. There is no dispute in this case that Gabriel, Jr. opened the emergency exit door while the bus was traveling normally on the highway. Here, Defendants designed the rear emergency exit door to remain unlocked while the bus was moving with no reason to open this "emergency exit" door. "The door [was] designed to be quickly released."[12] But there was no warning that the emergency exit door would remain unlocked while the bus was moving. Evidence from Erron Fox, a driver traveling behind the bus, shows that Gabriel, Jr. tried to close the opened door but instead fell out of the bus.[13]

The liability issue of a safer alternative design turns on whether a <u>locked</u> rear "emergency exit" door would have prevented Gabriel Miranda, Jr.'s death on the highway. There was no reason for that emergency exit door to be unlocked and

---

[11] *See Coleman v. Cintas Sales Corp.*, 40 S.W.3d 544, 550-51 (Tex. App.—san Antonio 2001, pet. denied) ("A manufacturer may be held liable for foreseeable misuse of its product. Where a produce is not defected if used as intended, a foreseeable misuse may still give rise to a duty to warn") (citations omitted).

[12] Defendants' Sales Data Sheet, Rear Emergency Door and Accessories, **Exhibit D**, Bates Nav 82.

[13] Erron Fox Affidavit and Handwritten Statement, **Exhibit A**, PL Bates 12, 114-117.

capable of being opened while the bus is moving on the highway and operating under normal conditions. There is no issue about a locked door being unlocked and then opened for a mindset of suicide to be possibly relevant. There was no warning of the unlocked emergency door. Gabriel, Jr.'s "negligent failure to discover or guard against a product defect [unlocked door] is not a defense against strict products liability."[14] Therefore, Defendants further inquiry into suicide is not relevant to contributory negligence and contributory negligence is no defense for opening an unlocked "emergency exit" door when there was no emergency and Defendants gave no warning. Allowing Defendants to present suicide to the jury when this issue is not relevant to this product defect claim would only confuse the issues, inflame the jury, and unfairly prejudice Plaintiffs.

> **B. Defendants' Invasion Of Privacy Is Not Proportional To The Needs Of This Case Because More Reasonable And Less Tangential Discovery Is Available To Defendants.**

Even if a suicide were hypothetically relevant, which it is not as explained above, Defendants must also satisfy the second requirement of proportionality under Rule 26(b)(1). But Defendants' desired inquiry is not proportional to the needs of the case. First, Defendants assert on page 4 of their Motion they wish to find key witnesses through searching Gabriel, Jr's google account. Defendants

---

[14] *Ramsey Ramsey v. Lucky Stores, Inc.*, 853 S.W.2d 623, 634 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (citations omitted).

already know who the people Gabriel, Jr. interacted with most frequently prior to his death. Key-witness information is already found (1) in the 40 affidavits of the students on the bus made by the Edinburg police during their investigation,[15] which Plaintiffs already produced on June 6, 2019, (2) in the cell phone records, which Plaintiffs produced on June 28, 2019,[16] (3) in the Edinburg police's 131 pages of screen shots of texts between Gabriel, Jr. and his ex-girlfriend Emily, whom he texted that morning, and (4) in the cell phone Defendants had inspected and downloaded on September 24, 2019.

If Defendants have already spoken to these witnesses, then they should provide the Court with their "information and belief of expected testimony" to satisfy the proportionate requirement of Rule 26(b) for further inquiry. Defendants have not first searched for corroborating evidence of a "suicidal state of mind" from any of the students who were on the bus or his friends or relatives. Without important discovery from these witnesses first, information about the number of times someone calls or texts someone else, location of calls or texts, data usage, and apps used,[17] are not probative of a suicide attempt on the occasion in question.

---

[15] Edinburg Police Report - Student Seating Chart, **Exhibit B**, PL Bates 276.

[16] Gabriel, Jr.'s cell phone records, **Exhibit C**, PL Bates 500, 516, 517, 534.

[17] *See* Defendants' Motion, at 3 (referring to Scott Greene's affidavit, paragraphs 15, 16, 18, 19).

Second, on page 7 of their Motion, Defendants assert they "do not have all the information and data necessary to properly evaluate Miranda's state of mind and cause of his death." But Defendants know from the Death Certificate that cause of death was blunt force head trauma[18] onto highway concrete. And Defendants need to seek this type of information on Gabriel, Jr.'s general disposition and state of mind from witnesses, not from records showing how much activity he had on his cell phone.

Third, rummaging through a google account and CDR information about Gabriel, Jr.'s amount of phone data usage from the prior day, prior week, prior month, or prior year from the day of the incident is not probative of what was in Gabriel, Jr.'s mind at the time the rear emergency door opened. There is no evidence of any prior attempt of suicide. Rather, Gabriel, Jr.'s activities and interactions the hours prior to his death are relevant to Defendants' suicide theory on the occasion in question. If the recent inquiries show any evidence of suicide, then Defendants may have a better argument to search tangential information.

Fourth, disclosure non-parties' information in a google account or Call Data Records is not relevant to any issue in this case. Fifth, Defendant have not shown any spoliation of messages to warrant further inquiry. Therefore, the scope of

---

[18] Death Certificate, **Exhibit E**, PL Bates 440.

Defendants' further discovery inquiry is not proportional to the needs of this case. Further inquiry into suicide would not help resolve any issues in this case. Rather infusing suicide into this product defect case would only help to confuse the issues, inflame the jury, and unfairly prejudice Plaintiffs.

## IV.  CONCLUSION

For all the above reasons, Defendants have not shown the private and personal information from non-parties in the google account and cell phone data usage by Gabriel, Jr. are relevant and proportional to the needs of the case.

Foremost, the issue of suicide is not relevant to any issue in this case. Defendants cannot use the assumption of the risk defense in this case. Gabriel, Jr.'s death was caused by Defendants' defectively design of an unlockable rear emergency exit door when there was no emergency while a bus is operating under normal conditions on a highway.

Defendants also cannot use the defense of contributory negligence. There was no warning that the rear "emergency exit" door would remain unlocked when there was no emergency and the bus was moving at highway speed. Gabriel, Jr.'s failure to discovery that the rear emergency exit door was unlocked is not a defense against Plaintiffs' strict products liability claim. There is no question that Gabriel, Jr. opened that unlocked door. There is no scenario of a locked door that was unlocked and opened for suicide to even be relevant.

Second, Defendants' further inquiry into suicide is not proportional to the discovery needs in this case. Defendants have yet to certify that they have sought other available discovery to find key witnesses, to show Gabriel, Jr. was suicidal at the time in question, or to show that anything had been deleted from the cell phone. Defendant have yet to find any evidence of suicide in the discovery they have already received or testimonial discovery from the numerous witnesses. If they have, Defendants should show the Court to justify further inquiry.

Furthermore, information in Gabriel, Jr.'s google account would not be relevant to Gabriel, Jr.'s state of mind at the time he opened the <u>unlocked</u> rear emergency exit door on the school bus. Information in Gabriel, Jr.'s google account and information from and about non-parties from that account or how much data was used on his cell phone from Call Data Records would not be relevant to Gabriel, Jr.'s state of mind at the time he opened the <u>unlocked</u> rear emergency exit door on the school bus. Defendants have not shown and cannot show that discovery of the Call Data Records or a google account is proportional to the needs of the case. Further inquiry into suicide would not help resolve any issues in this case, but rather would only help to possibly inflame the jury against Plaintiffs. Plaintiffs have produced sufficient discovery for Defendants to explore and go to work on their defense theories. Defendants should not be allowed to further their speculative fishing expedition.

WHEREFORE, Plaintiffs request the Court deny Defendants' Motion to Compel, and for any other relief to which Plaintiffs are entitled.

Respectfully submitted,

TURLEY LAW FIRM

*/s/ T Nguyen*
T Nguyen
State Bar No. 24051116
6440 North Central Expressway
1000 Turley Law Center
Dallas, Texas 75206
Telephone No. 214/691-4025
Telecopier No. 214/361-5802
Email: tn@wturley.com; roxanam@wturley.com

Windle Turley
State Bar No. 20304000
Email: win@wturley.com; roxanam@wturley.com

ATTORNEYS FOR PLAINTIFFS

**Of Counsel**

GORMAN LAW FIRM, PLLC
Terry P. Gorman
State Bar No. 08218200
901 Mopac Expwy S Suite 300
Austin, TX 78746
Telephone No. 512/320-9177
Telecopier No. 512/597-1455
tgorman@school-law.co

## CERTIFICATE OF SERVICE

This is to certify that on this 27th day of November 2019, a true and correct copy of the foregoing document was filed in the CM/ECF filing system in this Court, which will serve all counsel of record.

*/s/ T Nguyen*
T Nguyen