IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| GABRIEL MIRANDA, SR., and | § | |
| MARIA FUENTES, Individually | § | |
| and as Representatives of the Estate of | § | |
| GABRIEL MIRANDA, JR., | § | |
| | § | CIVIL ACTION NO. 7:18-CV-00353 |
| v. | § | JURY |
| | § | |
| NAVISTAR, INC., NAVISTAR | § | |
| INTERNATIONAL CORPORATION, | § | |
| IC BUS, LLC, AND IC BUS OF | § | |
| OKLAHOMA, LLC | § | |

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT ON 11 OF DEFENDANTS' AFFIRMATIVE DEFENSES**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Navistar, Inc., Navistar International Corporation, IC Bus, LLC and IC Bus of Oklahoma, LLC (collectively, "Navistar") file this Response to Plaintiffs Gabriel Miranda, Sr. and Maria Fuentes' (Individually and as Representatives of the Estate of Gabriel Miranda) (collectively, "Plaintiffs") Motion for Summary Judgment on certain of Navistar's affirmative defenses and respectfully show the court as follows:

**I.**
**INTRODUCTION**

Plaintiffs have filed what is, in essence, a "no-evidence" motion for summary judgment under the Texas Rules of Civil Procedure, complaining the Navistar "fails to make a showing sufficient to establish" certain of its asserted affirmative defenses. Plaintiffs' motion is procedurally improper because such "no-evidence" motions are not recognized in federal court. But, even ignoring Plaintiffs' confusion regarding the forum in which their case is pending, there

are clearly genuine issues of material fact as to the defenses asserted in Navistar's live pleadings.

Accordingly, Plaintiffs' motion is completely without merit and should be denied.

## II.
### NAVISTAR'S SUMMARY JUDGMENT EVIDENCE

In support of this Response, Navistar relies upon the pleadings and evidence that are already on file with the Court, which is incorporated herein by reference as if fully set forth at length for all purposes.  In further support, Navistar attaches the following evidence:

| | |
|---|---|
| Exhibit A | Deposition of Joe Labonte |
| Exhibit B | Declaration of Christopher J. Bonanti |
| Exhibit C | Affidavit of Laura Castro Ruiz |
| Exhibit D | Affidavit of Arturo Javier Ayala |
| Exhibit E | Affidavit of Emily Lopez |
| Exhibit F | Affidavit of Jeremy Ornelas |
| Exhibit G | Affidavit of Dereck Ethan Jimenez |
| Exhibit H | Deposition of Officer Marcos Perez |
| Exhibit I | Deposition of Officer Armando Celedon |
| Exhibit J | ER Records from Doctors Hospital at Renaissance |
| Exhibit K | Death Certificate |
| Exhibit L | Autopsy Report |

## III.
### OBJECTION TO AND MOTION TO STRIKE EXPERT REPORT OF ROB BERRIMAN

In support of their Motion for Summary Judgment, Plaintiffs have included the unsworn expert report of Rob Berriman as "Exhibit A" to their motion.[1] "Unsworn expert reports . . . do not qualify as affidavits or otherwise admissible evidence for the purpose of Rule 56[.]" *Provident Life and Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir.2001) (internal quotations omitted); *accord Smith v. Palafox*, 728 Fed. Appx. 270, 275–76 (5th Cir. 2018). Here, Mr. Berriman's report is not sworn, verified, or otherwise made under penalty of perjury. Accordingly, his report is not summary judgment evidence, and should not be considered.

---

[1] *See* Expert Report of Rob Berriman (attached as "Exhibit A" to Plaintiffs' Motion for Summary Judgment on 11 of Defendants' Affirmative Defenses) (Doc. No. 54-1), on file with the Court.

# IV.
## FACTUAL BACKGROUND

On the morning of November 14, 2016, 13-year-old Gabriel Miranda, Jr. ("Decedent") and the other members of his eighth-grade class loaded onto a 2010 CE-Series school bus—which Navistar designed, manufactured, and distributed—for a field trip to the University of Texas Rio Grande Valley campus.[2]  Decedent, who recently quarreled with his girlfriend,[3] sat in the back row near the emergency exit.[4]  While the bus was traveling north on Interstate 69, Decedent opened the emergency exit door and jumped from the bus.[5]  Decedent landed on the pavement, sustaining severe trauma to his head.[6]  The bus stopped, several teachers and bystanders tried to render aid, but Decedent did not show any signs of life.[7]  First-responders arrived and transported Decedent to the emergency room.[8]  Decedent was pronounced dead later that morning.[9]  An autopsy determined that the manner of death was suicide.[10]  Likewise, the final police investigation report of the incident concluded the case was a suicide.[11]

Plaintiffs—who are Decedent's parents and the representatives of Decedent's estate—filed this lawsuit on November 13, 2018, against Navistar.[12]  In their latest complaint, Plaintiffs allege the rear emergency exit door was defectively designed, which caused or contributed to Decedent's injuries and death.[13]  Plaintiffs assert claims against Navistar as the bus's designer/manufacturer for strict products liability.[14]  They seek to recover damages for burial

---

[2]   *See* Ex. C, D, F, and G.
[3]   *See* Ex. E.
[4]   *See* Ex. F and G
[5]   *See* Ex. C, D, E, F, and G.
[6]   *See* Ex. H at 5:24-8:6.
[7]   *Id.*
[8]   *See* Ex. J.
[9]   *See* Ex. K.
[10]  *See* Ex. L.
[11]  *See* Ex. I at 37:5-42:11.
[12]  *See* Plaintiffs' Original Complaint (Doc. No. 1), on file with the Court.
[13]  *See* Plaintiffs' Second Amended Complaint (Doc. No. 38), on file with the Court, at ¶¶ IV(1)-(8).
[14]  *Id.* at ¶¶ IV(1)-(8).

expenses, pain and mental anguish, loss of consortium, and exemplary damages.[15]   Navistar

timely appeared and answered this lawsuit, asserting various affirmative defenses.[16]   On August

19, 2020, Plaintiffs filed the instant motion for summary judgment, asking the Court to dismiss

11 of Navistar's asserted affirmative defenses on "no-evidence" grounds.[17]   Plaintiffs' motion is

legally factually baseless and should be denied.

## V.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 permits summary judgment "if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law."   FED. R.

CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   A fact is material if it

might affect the outcome of the lawsuit under the governing law.   *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986); *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994).   A

dispute about a material fact is genuine if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party.   *Anderson*, 477 U.S. at 248; *Wise v. E.I. DuPont De Nemours*

*& Co.*, 58 F.3d 193, 195 (5th Cir. 1995).   Thus, if the finders-of-fact could resolve a factual issue

in favor of either party, summary judgment is improper.   *Anderson*, 477 U.S. at 249.

The summary-judgment movant bears the initial burden of providing a legal basis for its

motion and identifying those portions of the record that demonstrate the absence of a genuine

issue of material fact.   *Celotex*, 477 U.S. at 323.   "'If the moving party fails to meet its initial

burden, its motion for summary judgment must be denied, regardless of the non-movant['s]

---

[15]   *Id.* at ¶¶ V(1)-VI(1).

[16]   *See* Navistar's Original Answer (Doc. No. 7) and Navistar's First Amended Answer (Doc. No. 31), on file with the Court.

[17]   *See* Plaintiffs' Motion for Summary Judgment on 11 of Defendants' Affirmative Defenses (Doc. No. 54) ("Plaintiffs' MSJ"), on file with the Court.

response."' *Exxon Mobil Corp. v. U.S.*, Nos. H-10-2386, H-11-1814, 2015 WL 3513949, *at 15 (S.D. Tex. June 4, 2015) (quoting *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002)).  If—and only if—the movant meets this threshold showing, the burden shifts to the non-movant to present affirmative evidence to support its claims or defenses.  *Anderson*, 477 U.S. at 257.  All facts and inferences must be viewed in a light favorable to the non-movant.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Hibernia Nat'l Bank v. Carter*, 997 F.2d 94, 97 (5th Cir. 1993).

# VI.
## ARGUMENT AND AUTHORITIES

**A.     Plaintiffs' challenges to certain affirmative defenses are moot.**

As a preliminary matter, Navistar notes that, in addition to the affirmative defenses discussed in more detail in the sections below, Plaintiffs have moved for summary judgment on Navistar's previously-asserted affirmative defenses of (1) lack of subject matter jurisdiction, (2) lack of personal jurisdiction, (3) improper venue, (4) statute of limitations, (5) failure to mitigate damages, and (6) waiver/estoppel.[18]  Contemporaneously with this response, Navistar is filing a Motion for Leave to File Second Amended Answer to Plaintiffs' First Amended Complaint, which has removed these defenses.[19]  Thus, Plaintiffs' motion is moot as to these defenses.

**B.     Plaintiffs' "no-evidence" motion for summary judgment is improper.**

Plaintiffs construct their summary judgment argument by broadly asserting at the outset of their motion that "Defendants have no evidence to support 11 of their affirmative defenses."[20] Then, Plaintiffs provide a brief recitation of the challenged defenses, usually followed by a conclusory (and, frankly, false) assertion that some perceived element of the defense is

---

[18]  *See* Plaintiffs' MSJ at pg. 5-7; *see also* Navistar's First Amended Answer at pg. 6.
[19]  *See* Navistar's Motion for Leave to File Second Amended Answer, on file with the Court; *see also* Navistar's Second Amended Answer, attached as "Exhibit A" to the Motion for Leave, also on file with the Court.
[20]  *See* Plaintiffs' MSJ at pg. 4.

"undisputed."[21]  Plaintiffs then conclude their motion by repeating that "Defendants have no evidence in law or in fact to support their 11 defenses and there is no genuine dispute as to any material fact."[22]   In essence, Plaintiffs have asserted a "no-evidence" motion for summary judgment pursuant to TEX. R. CIV. P. 166a(1), which is not proper in federal court.

In federal court, "[i]t is not enough to move for summary judgment . . . with a conclusory assertion that the [non-movant] has no evidence to prove his case." *Celotex*, 477 U.S. at 328 (White, J., concurring); *accord Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987).  For this reason, "there is no such thing as a 'no evidence' summary judgment under Federal Rules." *In re Perry*, 08-32362-H4-11, 2009 WL 2753181, at *3 (Bankr. S.D. Tex. Aug. 26, 2009).  Rather, at all times, it remains Plaintiffs' burden to identify the portions of the record that affirmatively show the absence of a material fact issue. *Celotex*, 477 U.S. at 323; *Trautmann v. Cogema Mining, Inc.*, CIV.A. 5:04-CV-117, 2007 WL 1577652, at *3 (S.D. Tex. May 30, 2007).  Until Plaintiffs meet this burden, Navistar has *no* obligation come forward with *any* evidence to support its case, even on issues for which Navistar bears the burden of proof at trial. *Russ v. Int'l Paper Co.*, 943 F.2d 589, 592 (5th Cir. 1991).  On this basis alone, Plaintiffs' "no-evidence" motion is improper and should be denied.

**C.      Plaintiffs have failed to state a claim for which relief may be granted.**

Nevertheless, even if Plaintiffs' "no-evidence" motion were procedurally proper (which it is not), it still fails on the merits because there are clearly genuine issues of material fact as to the challenged defenses. First, Plaintiffs seek summary judgment on Navistar's defense of "fail[ure] to state a claim upon which relief may be granted."[23]   In support, Plaintiffs' merely assert that their "Second Amended Complaint . . . alleg[es] [a] strict product liability automotive design

---

[21]  *Id.*at pg. 4-11.
[22]  *Id.* at pg. 11.
[23]  *See* Plaintiffs' MSJ at pg. 5; *see also* Navistar's First Amended Answer at pg. 6.

defect cause of action for damages to Plaintiffs and the Estate of Plaintiffs' decedent."[24] Plaintiffs ignore, however, that Navistar has filed its own motion for summary judgment showing that Plaintiffs' purported "strict product liability" claim is not viable.[25]

Specifically, in its MSJ (which is hereby fully incorporated by reference), Navistar explains that the federal regulations governing school bus emergency exits preclude the purported "safer alternative design" Plaintiffs offer in support of their "design defect" case— namely, an exit door that automatically locks when traveling at highway speeds.[26] Thus, even accepting Plaintiffs' allegations as true, their claims are preempted. *See Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 869 (2000); *O'Hara v. Gen. Motors Corp.*, 508 F.3d 753, 758 (5th Cir. 2007). As such, Plaintiffs fail to state a claim for which relief may be granted, and their bare assertion to the contrary cannot defeat Navistar's defense on these grounds. *See Ramirez v. Inter-Cont'l Hotels*, 890y F.2d 760, 764 (5th Cir. 1989) (a plaintiff fails to state a claim when claims are preempted by federal law).

**D.     Navistar has properly identified potential responsible third parties whose acts and/or omissions proximately caused Plaintiffs' claimed injuries.**

Plaintiffs also seek summary judgment on Navistar's defense that "the injuries and damages which [Plaintiffs] claim to have suffered were caused by the conduct, intentional, or negligent acts or omissions of third-parties or a third-party, over whom Defendants had no control or right of control[.]"[27] This defense arises out of Chapter 33 of the Texas Civil Practices and Remedies Code, which allows tort defendants to designate potentially at-fault entities or individuals as "responsible third-parties" so their fault can be considered by the fact-finder in

---

[24] *See* Plaintiffs' MSJ at pg. 5.
[25] *See* Navistar's Motion for Summary Judgment (Doc. 46) ("Navistar's MSJ"), Reply in Support of Motion for Summary Judgment (Doc. 50), and exhibits included therewith, on file with the Court.
[26] *Id.*
[27] *See* Plaintiffs' MSJ at pg. 6; *see also* Navistar's First Amended Answer at pg. 6.

apportioning responsibility.  TEX. CIV. PRAC. & REM. CODE § 33.004.  "Chapter 33 allows a defendant liberally to designate responsible third parties, including parties not subject to the court's jurisdiction, immune from suit, or who are unknown."  *Fisher v. Halliburton*, CIV. A. H-05-1731, 2009 WL 1098457, at *1 (S.D. Tex. Apr. 23, 2009).

In their three-sentence argument concerning this defense, Plaintiffs make the peculiar observation that "'[s]ole proximate cause' means that the conduct of a person other than the plaintiff or defendant is the only cause of the occurrence at issue."[28]  To the extent Plaintiffs mean to suggest that a responsible third party must be the "sole proximate cause" of the claimed injuries for a defendant to take advantage of Chapter 33's proportionate responsibility scheme, this is patently untrue.  By its own terms, Chapter 33 applies to "any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible *for a percentage* of the harm for which relief is sought."  TEX. CIV. PRAC. & REM. CODE § 33.002 (emphasis added).  To this end, Chapter 33 defines a "responsible third party" as "any person who is alleged to have caused *or contributed to causing in any way* the harm for which recovery of damages is sought[.]"  *Id.* § 33.011(6) (emphasis added).  Thus, *nothing* in Chapter 33 requires that a responsible third party be the "sole proximate cause" of the claimed injury.

Plaintiffs also state that "Defendants have not filed and should be barred from now filing a motion to designate a responsible third party."[29]  This is a false statement, plain and simple. On May 29, 2020, Navistar filed a motion for leave to designate Harlingen Consolidated Independent School District ("HCISD") as a responsible third-party in this case.[30]  In the motion (which is hereby fully incorporated by reference), Navistar plainly sets forth the basis for the

---

[28] *See* Plaintiffs' MSJ at pg. 6.

[29] *Id.*

[30] *See* Navistar's Motion for Leave to Designate HCISD as a Responsible Third Party (Doc. 43), on file with the Court.

designation—namely, HCISD's failure to maintain appropriate policies and procedures for adult supervision of students on school buses and/or the failure of HCISD's employees, agents, and representatives to supervise the students adequately on the day of the incident.[31]  Navistar filed this designation more than sixty days before trial of this case, and therefore, such designation is timely under Chapter 33.  TEX. CIV. PRAC. & REM CODE § 33.004(a).

Plaintiffs are well aware of this designation.  Indeed, Plaintiffs' opposed the designation and filed objections to the motion for leave (frivolous though such objections are).[32]  Tellingly, in their summary judgment motion, Plaintiffs do not mention these objections or raise any other substantive challenge to HCISD's designation.  Apparently, Plaintiffs have abandoned their baseless objections in favor of the equally fatuous assertion that Navistar has not sought to designate any responsible third-party in this case.  In any event, it is clear that Navistar has met its obligations under Chapter 33's "responsible-third-party" provisions and should be allowed to avail itself of Chapter 33's proportionate responsibility scheme.

**E.    At a minimum, fact issues exist as to whether Decedent's conduct was an independent, intervening cause of his injuries and death.**

Plaintiffs also challenge Navistar's asserted defense of "new and independent cause and/or intervening and superseding cause."[33]  A "new and independent" and/or an "intervening and superseding" cause is an act or omission of a separate and independent agency that destroys the causal connection between the defendant's conduct and the claimed injury.  *Cook v. Caterpillar, Inc.*, 849 S.W.2d 434, 440 (Tex. App.—Amarillo 1993, writ denied).  A defendant in a products-liability action may raise the issue of new and independent cause as an "inferential,

---

[31] *Id.*

[32] *See* Plaintiffs' Objection to Defendants' Motion for Leave to Designate HCISD as a Responsible Third Party (Doc. No. 47), on file with the Court.  Navistar has timely filed a full response to Plaintiffs' objections.  *See* Navistar's Response to Plaintiffs' Objections (Doc. No. 48), also on file with the Court.

[33] *See* Plaintiffs' MSJ at pg. 6-7; *see also* Navistar's First Amended Answer at pg. 6.

rebuttal defense." *Martinez v. Sci. Applications Int'l Corp.*, 1:10-CV-207, 2015 WL 11109381, at *9 (S.D. Tex. June 29, 2015).   In such cases, whether an intervening act will constitute a new and independent cause is generally a question of foreseeability—namely, whether the intervening cause is a reasonably foreseeable result of the defect in question. *Dover Corp. v. Perez*, 587 S.W.2d 761, 765 (Tex. Civ. App.—Corpus Christi 1979); *Stanfield v. Neubaum*, 494 S.W.3d 90, 98 (Tex. 2016).  Foreseeability is a "***highly fact-specific inquiry***" that must be determined "in the light of the attending circumstances. " *Neubaum*, 494 S.W.3d at 98 (emphasis added).

Courts—including the Fifth Circuit—have held that an injured party's intentional acts to harm himself are unforeseeable and, therefore, qualify as a "new and independent cause." *See Bornmann v. Great Sw. Gen. Hosp., Inc.*, 453 F.2d 616, 624 (5th Cir. 1971); *Speer v. United States*, 512 F. Supp. 670, 678-79 (N.D. Tex. 1981), *aff'd*, 675 F.2d 100 (5th Cir. 1982).  For this reason, suicide generally constitutes an intervening force that breaks the line of causation. *Exxon Corp. v. Brecheen*, 526 S.W.2d 519, 523-24 (Tex. 1975); *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, writ denied).   Here, both the police investigation report and the autopsy report indicate that Decedent's death was by suicide.[34] Moreover, *multiple* eyewitnesses have provided sworn statements that Decedent—who had recently quarreled with his girlfriend—was "crying" in the rear of the bus and appeared "mad," "angry, "depressed," and "sad" immediately before the incident.[35]  These same witnesses aver that Decedent intentionally got up from his seat, unlatched the rear emergency exit door, and "jumped off the bus."[36] At a minimum, this evidence creates a fact issue as to whether Decedent's purposeful acts were a superseding cause of his injuries and death.[37]

---

[34]  *See* Ex. L; *see also* Ex. I at 37:5-42:11.
[35]  *See* Ex. E, F, and G.
[36]  *Id.*
[37]  Navistar acknowledges that Plaintiffs contest the determinations of the police investigation report and the autopsy

In support of their motion for summary judgment, Plaintiffs assert that "there are no facts to show that any other event occurred between Plaintiffs' decedent's unlatching/releasing/ opening of the rear emergency exit door and egressing onto the highway to his death."[38] Apparently, Plaintiffs wish to temporally link Navistar's perceived "wrongful conduct" with the moment that Decedent unlatched the allegedly defective emergency exit door. Thus, in Plaintiffs' view, Decedent's and Navistar's "conduct" occurred simultaneously, such that there was no "intervening" event to break the causal chain. Plaintiff's argument is based on a contrived interpretation of the facts that finds no support in Texas law.

In product liability cases, the "wrongful conduct" occurs when the defendant places the defectively designed and/or manufactured product into the stream of commerce. *See Crisman v. Cooper Indus.*, 748 S.W.2d 273, 277 (Tex. App.—Dallas 1988, writ denied) ("[T]he mere design or manufacture of a defective product is not actionable. To invoke the doctrine of strict liability in tort, the product producing injury or damages must enter the stream of commerce."); *accord Bain v. Honeywell Intern., Inc.*, 257 F. Supp. 2d 872, 876 (E.D. Tex. 2002). Thus, the proper temporal point from which to begin evaluating intervening causes is the point at which the product "left the designer/manufacturer's hands" and entered the market. *See Michelin N. Am., Inc. v. De Santiago*, 584 S.W.3d 114, 134 (Tex. App.—El Paso 2018, pet. dism'd) ("The focus of a products liability case is the condition of the product at the time it left the

---

report that the manner of death was a suicide, and they likewise dispute the description of events contained in the witness statements mentioned above. In support of their position, Plaintiffs point solely to the statement of Earon Fox, an individual who was driving some distance behind the subject bus at the time of the incident. Mr. Fox claims that Decedent was "attempting to close" the rear emergency exit door when he "fell" from the rear of the bus (despite the fact that Mr. Fox was driving a separate, moving vehicle on the expressway and was talking on his cell phone at the time these events occurred). *See* Affidavit of Earon Fox (attached as "Exhibit D" to Plaintiffs' MSJ) (Doc. No. 54-4), on file with the Court. Although Navistar certainly contests Mr. Fox's description of events, it is not necessary for Navistar to disprove or discredit Mr. Fox's statement at this time. The fact that there are conflicting statements concerning the underlying events is sufficient to create a fact issue and defeat summary judgment. *See John G. Mahler Co. v. Klein Karoo Landboukooperasie DPK*, 58 F.3d 636 (5th Cir. 1995) ("[T]he testimony of . . . witnesses may conflict, thus creating disputed fact issues for summary judgment purposes.").

[38]  *See* Plaintiffs' MSJ at pg. 7.

manufacturer's possession."). This is true even if the alleged "defect" creates the conditions that allow the injury to occur. *Neubaum*, 494 S.W.3d at 99 ("But if the original negligence . . . merely create[s] the condition that enabled the injury to occur, the intervening cause might [be] a superseding, or new and independent, cause.").

Here, it is beyond dispute that Decedent's purposeful acts of unlatching the emergency exit door and jumping off the bus occurred well after the bus entered the stream of commerce. Therefore, these acts constitute intervening events that potentially break the chain of causation. But, even if it could be accepted that Navistar's allegedly tortious conduct coincided with Decedent's act of opening the emergency door (which it cannot), there remain intervening acts that plausibly break the causal chain between Navistar's perceived conduct and Plaintiff's injuries. Specifically, as set forth above, there are sworn statements from witnesses that, *after* unlatching and opening the emergency exit door, Decedent ***willfully and intentionally jumped off the bus***.[39] Decedent's volitional act of jumping from a moving bus into traffic is, itself, an intervening act occurring between Decedent's engagement with the supposedly defective door and his subsequent injuries and death. Thus, at a minimum, there are genuine issues of material fact as to whether such conduct was a "foreseeable" result of the alleged defect.

**F.    Navistar has raised a fact issue concerning its right to contribution and/or comparative apportionment of liability.**

Next, Plaintiffs contest Navistar's "right to proportionate responsibility, contribution, comparative fault, indemnity, and/or credit[.]"[40] Once again, this defense arises out of Texas' proportionate liability scheme found in Chapters 32 and 33 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 32.001-32.003, 33.001-33.017. Plaintiffs oppose this defense on the grounds that their live pleading "has a strict product liability

---

[39]    *See* Ex. E, F, and G.
[40]    *See* Plaintiffs' MSJ at pg. 7-8; *see also* Navistar's First Amended Answer at pg. 7.

cause of action only" and "[t]here is no negligence claim" asserted in this case.[41]  Plaintiffs seem to believe that Texas' statutory contribution and/or comparative fault provisions only apply to "negligence" claims and not to "product liability" claims.  Again, Plaintiffs are wrong.

Chapters 32 and 33 of the Texas Civil Practice and Remedies Code apply to "tort actions" and to "any cause of action based on tort," respectively. TEX. CIV. PRAC. & REM. CODE §§32.001(a), 33.002(a)(1). The statutory phrase "cause of action based on tort" includes "negligence, ***products liability***, and any other conduct that violates an applicable legal standard[.]" *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 705 (Tex. 2008) (emphasis added). Further, Chapter 33  mandates the apportionment of responsibility "with respect to each person's causing or contributing to cause ***in any way*** the harm . . . whether by negligent act or omission, ***by any defective or unreasonably dangerous product***, by other conduct or activity that violates an applicable legal standard, or by any combination of these."  TEX. CIV. PRAC. & REM. CODE § 33.003(a)  (emphasis added). Clearly, Texas' contribution and comparative responsibility statutes apply to product liability actions like this one and mandate comparison of *all* responsible acts.  *See General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 593 and 595 (Tex. 1999) (discussing applicability of comparative responsibility in products liability actions and upholding finding of negligence of decedent to reduce beneficiaries' recovery).

In further support of their position, Plaintiffs repeat the untruth that "Defendants have not filed and should be barred from now filing a motion to designate a responsible third party."[42]  As set forth above, Navistar has, in fact, timely filed a motion for leave to designate HCISD as a responsible third party in this case.[43]  Plaintiffs are fully aware of this designation and offer no

---

[41]  *See* Plaintiffs' MSJ at pg. 8.
[42]  *Id.*
[43]  *See* Navistar's Motion for Leave to Designate HCISD as a Responsible Third Party.

serious challenge to it in their MSJ.  On this basis alone, the Court must reject Plaintiffs' inane argument on these grounds.

But, even if Navistar had not properly designated HCISD as a responsible third party, Chapter 33 would still apply.  Specifically, Chapter 33 states that the trier of fact "shall determine the percentage of responsibility [for] each claimant" in the case.  TEX. CIV. PRAC. & REM. CODE § 33.003.  Where, as here, the plaintiff seeks damages for the injury or death of another person, the term "claimant" includes "the person who was injured, was harmed, or died" as a purported result of the defendant's conduct.  TEX. CIV. PRAC. & REM. CODE § 33.011. Because all Plaintiffs' claims in this case arise from Decedent's injuries and death,[44] the extent to which Decedent's conduct caused or contributed to these damages *must* be considered by the jury, notwithstanding any designation.  TEX. CIV. PRAC. & REM. CODE § 33.003.  Further, as set forth above, there is more than a scintilla of record evidence supporting Navistar's position that Decedent's conduct—specifically, his purposeful acts of unlatching the emergency exit door and jumping from the rear of the bus—were contributing factors to his injuries and death.[45]  Thus, there are genuine issues of material fact as to this defense.

## G.  Navistar's contribution and comparative responsibility defenses do not depend upon any "failure to discover" and/or "failure to guard" theory.

Nevertheless, Plaintiffs insist that "[t]here should be no comparison of [Decedent's] action to Defendants' strict liability for a defective design."[46]  More specifically, Plaintiffs argue that "negligent failure to discover or guard against a product defect . . . is not a defense against strict products liability"—though, notably, without offering *any* explanation or argument regarding why or how Decedent's voluntary and intentional unlatching of the emergency exit

---

[44]  *See generally* Plaintiffs' Second Amended Complaint.
[45]  *See* Ex. E, F, G, L; *see also* Ex. I at 37:5-42:11.
[46]  *See* Plaintiffs' MSJ at pg. 8.

door is merely a "negligent" failure to discover the alleged defect or to guard against its possibility.[47]  Plaintiffs fail to meet their summary judgment burden as to this contention.

Even the case cited by Plaintiffs[48] notes that the principles regarding the negligent failure to guard against or discover the possibility of a defect "does not mean that no negligence of the injured party can be considered in a products liability suit."  *Ramsey v. Lucky Stores, Inc.*, 853 S.W.2d 623, 634 (Tex. App.—Houston [1st Dist.] 1993, writ denied).  The Texas Supreme Court most recently addressed this concept in *Sanchez*, 997 S.W.2d at 592-595. The court agreed that the decedent had no "duty to discover defects" because "to take precautions in constant anticipation that a product might have a defect would defeat the purpose of product liability"; however, the court also held that conduct other than the "mere" failure to discover or guard against the possibility of a defect is subject to comparative responsibility:

> Public policy favors reasonable conduct by consumers regardless of whether a product is defective. A consumer is not relieved of the responsibility to act reasonably nor may a consumer fail to take reasonable precautions regardless of a known or unknown product defect . . . . [W]e determine whether the decedent's conduct . . . was merely the failure to discover or guard against a product defect or some other negligence unrelated to a product defect.

997 S.W.2d at 594, 595. Thus, when a consumer's conduct "goes beyond" failing to discover or guard against a defect—for instance, by "voluntarily and unreasonably proceeding to encounter a known danger"—such conduct "is subject to comparative responsibility." *Id.* at 594.

In *Sanchez*, the defective product was a pickup transmission that would allow the transmission to shift from what appeared to be the "park" position to "reverse" on its own. *Id.* at 587.  The decedent in *Shanchez* was killed when, after he exited his pick-up, it slipped into reverse and crushed him between the cab of the pick-up and a corral gate. *Id.*  Reversing the court of appeals, the Texas Supreme Court held that the decedent's conduct should have been

---

[47]  *Id.*
[48]  *Id.* at pg. 8 n.15 (citing *Ramsey* opinion).

compared to General Motors' responsibility because his conduct amounted to more than just a mere failure to discovery or guard against a product defect. *Id*. at 586. As the court explained, "[r]egardless of any danger of a mis-shift, a driver has a duty to take reasonable precautions to secure his vehicle before getting out of it. . . . The fact that precautions demanded of a driver generally would have prevented this accident does not make [the decedent's] negligence a mere failure to discover or guard against a mis-shift." *Id*. at 595-96.

In this case, there is more than a scintilla of evidence that Decedent engaged in conduct that went considerably beyond a mere failure to discover or guard against the alleged product defect. As discussed, there is eyewitness testimony that Decedent, who was depressed and angry following a quarrel with his girlfriend, purposefully opened the emergency exit door while the bus was traveling at highway speeds and jumped from the rear emergency exit with the intent to commit suicide.[49] This testimony is corroborated by the police investigation report and autopsy report, both of which concluded that the manner of death was suicide.[50] Accepting this evidence as true (as the Court must), there are clearly fact issues concerning Decedent's comparative responsibility for his injuries and death, and Navistar is entitled to have these issues considered.

In sum, Navistar does not argue or allege that Decedent negligently failed to discover or consider the possibility that, due to some defect, the emergency exit door might unexpectedly become unlatched while the bus was moving and failed to guard against that risk. To the contrary, the summary judgment evidence shows that Decedent ***fully expected and intended*** that his actions would result in the opening of the emergency exit door while the bus was traveling at highway speeds. In acting as he did, Decedent breached the general duty to act reasonably to protect himself from harm—specifically, the harm that could and did result from his unlatching

---

[49]  *See* Ex. E, F, G.
[50]  *See* Ex. L; *see also* Ex. I at 37:5-42:11.

and opening the emergency exit door (regardless of whether he then jumped or fell).  His conduct—whether negligent, reckless, or intentional—goes well beyond a "mere" failure to discover or guard against a perceived defect, and Plaintiffs' argument is meritless.

**H.     Navistar's defense under TEX. CIV. PRAC. & REM. CODE § 93.001(a)(2) is viable.**

Finally, Plaintiffs seek summary judgment on Navistar's defense under § 93.001 of the Texas Civil Practice and Remedies Code, which states in pertinent part:

> It is an affirmative defense to a civil action for damages for personal injury or death that the plaintiff, at the time the cause of action arose, was [. . .] committing or attempting to commit suicide, and the plaintiff's conduct in committing or attempting to commit suicide was the sole cause of the damages sustained; provided, however, if the suicide or attempted suicide was caused in whole or in part by a failure on the part of any defendant to comply with an applicable legal standard, then such suicide or attempted suicide shall not be a defense.

TEX. CIV. PRAC. & REM. CODE § 93.001(a)(2).[51]  Plaintiffs argue that Navistar cannot take advantage of this defense because Navistar failed to comply with a legal standard, which "caused, in whole or in part" the incident in question.[52]  Specifically, Plaintiffs maintain that "if Defendants' emergency exit door had been designed to lock while the bus was traveling on the highway . . . [Decedent] could not have gone out the back of the bus on the occasion in question."[53]  Thus, Plaintiffs contend, Decedent's "alleged suicide and mental state [are] not probative in this product liability case."[54]  Plaintiffs' reliance on the "failure-to-comply" exception to § 93.001's suicide defense is misplaced for several reasons.

**1.     The exception to § 93.001(a)(2)'s suicide defense does not apply.**

First and foremost, this is not the type of case to which § 93.001(a)(2)'s exception applies.  Courts have held that § 93.001's "suicide" defense is generally "consistent with" Texas'

---

[51] *See* Plaintiffs' MSJ at pg. 8-11; *see also* Navistar's First Amended Answer at pg. 7.
[52] *See* Plaintiffs' MSJ at pg. 9-10.
[53] *Id.*
[54] *Id.* at pg. 10.

- 17 -

common law concerning new and independent causation. *Jones v. Maynard*, 01-95-00908-CV, 1999 WL 191162, at *3 (Tex. App.—Houston [1st Dist.] Apr. 8, 1999, no pet.); *Diggles v. Horwitz*, 765 S.W.2d 839, 841 (Tex. App.—Beaumont 1989, writ denied).   As previously discussed, the rule in Texas is that suicide constitutes an intervening force that breaks the line of causation from the wrongful act to the death. *Brecheen*, 526 S.W.2d at 523-24; *Humphrey*, 880 S.W.2d at 174.   The only recognized exception to this rule is when the defendant's wrongful conduct "produces a rage or frenzy whereby the person committing suicide was so devastatingly injured by the defendant's wrongful acts and, thereafter, destroys himself or herself during such rage which resulted in an uncontrollable impulse." *Diggles*, 765 S.W.2d at 842 (Brookshire, J., concurring); *accord Brecheen*, 526 S.W.2d at 523-24.

In keeping with these principles, the exception to § 93.001(a)(2)'s suicide defense is limited to cases where the defendant's unreasonable conduct causes or contributes to "***the suicide***[.]" TEX. CIV. PRAC. & REM. CODE § 93.001(a)(2) (emphasis added).   Courts narrowly apply this exception in situations where the defendant is in someway directly responsible for ***the suicidal act itself***—as opposed to conduct that merely causes or contributes to the resulting "bodily injury or death." *Galindo v. Dean*, 69 S.W.3d 623, 627-28 (Tex. App.—Eastland 2002, no pet.) (drawing distinction between acts the cause or contribute to "the suicide" and acts that cause or contribute to "bodily injury or death"); *see also Diggles*, 765 S.W.2d at 842-43 (Brookshire, J., concurring).   This typically occurs where the defendant's wrongful conduct creates or exacerbates the ***mental condition*** that precipitates the suicide, or where the defendant is charged with protecting an individual with known suicidal tendencies. *See Kassen v. Hatley*, 887 S.W.2d 4, 13 (Tex. 1994) (defendant hospital released a suicidal patient without medication); *Martinez v. City of Brownsville*, 13-00-425-CV, 2001 WL 1002399, at *5 (Tex.

App.—Corpus Christi Aug. 31, 2001, pet. denied) (defendant jailers failed to properly monitor suicidal inmate when they had specific duties of care to suicidal inmates, knew that the decedent was a suicide risk, and knew that inmates could use their clothing to hang themselves).

Here, all Plaintiffs' claims against Navistar stem from a perceived design defect in the subject bus's rear emergency exit door.[55]  Plaintiffs have not even *alleged*—much less *proven*— that this defect caused or contributed to Decedent's mental state such that it compelled him to open the rear emergency door and jump into moving traffic.  Likewise, Plaintiffs have not shown any legal or factual basis for imposing any duty on Navistar to protect Decedent (or any other passenger) from his own, purposeful self-harm—of which Navistar clearly could not have known or anticipated.  Simply put, the exception to § 93.001's suicide defense does not apply in this case, and Plaintiff's arguments fail.  *See Diggles*, 765 S.W.2d at 842-43 ("It is glaringly clear that Raven Arms, Inc. [a manufacturer in a product liability case] did not cause a mental illness nor did it cause a rage nor did it cause a frenzy nor did it bring about an uncontrollable impulse. Hence, Raven Arms, Inc., is simply not liable for [the decedent's] tragic suicide.").

2.    **There are genuine issues of material fact as to whether Navistar breached any applicable legal standard.**

Second, even if § 93.001(a)(2)'s exception did apply in this case (which it does not), Plaintiffs have not shown as a matter of law that Navistar breached any "applicable legal standard" as § 93.001 requires.  TEX. CIV. PRAC. & REM. CODE § 93.001(a)(2).  The "applicable legal standard" in products liability lawsuits is whether the product in question—here, the rear emergency exit door—contained a defect that rendered it "unreasonably dangerous."  *Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 6 (Tex. 2015) ("The law of products liability . . . imposes liability only for defective products that are 'unreasonably dangerous to the user or consumer.'")

---

[55]  *See generally* Plaintiffs' Second Amended Complaint.

(internal quotations omitted).  Generally, "[w]hether a seller has breached this duty, that is, whether a product is unreasonably dangerous, ***is a question of fact for the jury***."  *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 432 (Tex. 1997).

Here, Plaintiffs' argument that Navistar breached an "applicable legal standard" rests on their conclusory presumption that the lack of an automatic, in-motion lock rendered the subject emergency exit door "defective" and "unreasonably dangerous."[56]  Navistar emphatically contests this point on both legal and factual grounds.  Specifically, Navistar maintains that federal regulations expressly proscribe and preempt the hypothesized "in-motion" lock that Plaintiffs believe should have been installed on the subject door.[57]  Indeed, Navistar has moved for summary judgment on this basis, which motion is presently pending before the Court.[58]  Because Navistar fully complied with federal regulations governing the design of school buses (as it is bound to do), it did not violate any "applicable legal standard" as a matter of law.

But, even ignoring the question of federal preemption, there are clearly fact issues as to whether an "in-motion" lock is either practical or desirable.  In design defect cases like this, a product is "unreasonably dangerous" only when "its risk outweighs its utility."  *Matak*, 462 S.W.3d at 6.  Factors considered in making this utility-risk assessment include (among other things) (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious

---

[56] *See* Plaintiffs' MSJ at pg. 9-10.
[57] *See generally* Navistar's MSJ.
[58] *Id.*

- 20 -

condition of the product, or of the existence of suitable warnings or instructions; and (5) the expectations of the ordinary consumer. *Grinnell*, 951 S.W.2d at 432.

As Navistar has previously argued,[59] the overriding purpose of the rear emergency exit door—both under the federal regulations and as a matter of common sense—is to ensure "the speed and ease with which occupants can evacuate the vehicle" ***under any conceivable emergency scenario***. Federal Motor Vehicle Safety Standards; Bus Emergency Exits and Window Retention and Release, 57 Fed. Reg. 49,413 at 49,413-15, 49,423-24 (Nov. 2, 1992). In view of this, Navistar has provided the uncontested, expert testimony of Chris Bonanti (the former Associate Administrator for Rulemaking at the National Highway Traffic Safety Administration) affirming that an emergency exit door would lose all utility if it could be locked while driving.[60] Likewise, in his deposition, Navistar representative Joseph Labonte described some of the reasons why an in-motion lock poses a particular danger for passengers.[61] In view of this, there are—at a minimum—material fact issues as to whether the risks associated with an "in-motion" lock would outweigh the utility of the emergency exit door and, therefore, whether the lack of an in-motion lock breached any "applicable legal standard."

3.    **There are genuine issues of material fact as to whether Navistar's alleged breach "caused" Decedent's injuries and death.**

Nevertheless, even if it could be accepted that the lack of an "in-motion" lock *might* have breached an applicable legal standard (which it did not), this would still not end the inquiry. To defeat a § 93.001 defense, the breach in question must cause or contribute to the subject injuries

---

[59] *Id.*
[60] *See* Ex. B at ¶¶ 15-21.
[61] *See* Ex. A at 100:4-105:17, 111:22-114:2 (discussing scenarios in which an "in-motion" lock would present unique hazards for passengers).

and/or death.  As Plaintiffs readily acknowledge,[62] the question of causation involves the "***highly fact-specific inquiry***" of foreseeability.  *Neubaum*, 494 S.W.3d at 98.  As rigorously shown above, there are (at a minimum) genuine issues of material fact as to whether Decedent purposefully unlatched and opened the emergency exit door and, afterward, intentionally jumped from the moving bus with the specific aim of killing himself.[63]  Courts generally hold that (absent extraordinary circumstances) an injured party's willful and knowing participation in their own demise is *not* foreseeable and, thus, *not* attributable to a defendant's supposedly tortious conduct.  *See Bornmann*, 453 F.2d at 624; *Speer*, 512 F. Supp. at 678-79.  At the very least, the Court should allow a jury to consider and determine, based on the totality of the evidence, whether Decedent's misuse of the emergency exit in question—namely, as an instrument to purposefully end his own life—was foreseeable by Navistar.  *See Cowart v. Kmart Corp.*, 20 S.W.3d 779, 784–85 (Tex. App.—Dallas 2000, pet. denied).

## VII.
### CONCLUSION AND PRAYER

For the reasons discussed above, Plaintiffs' Motion for Summary Judgment is without merit.  Accordingly, Defendants Navistar, Inc., Navistar International Corporation, IC Bus, LLC and IC Bus of Oklahoma, LLC pray that the Court deny Plaintiffs' motion and for all other relief, at law or in equity, to which they may show themselves justly entitled.

---

[62]  *See* Plaintiff's MSJ at pg. 10 (acknowledging that the element of causation in product liability cases includes the question of foreseeability).
[63]  *See* Ex. E, F, G, L; *see also* Ex. I at 37:5-42:11.

Respectfully submitted,

SHEEHY, WARE & PAPPAS, P.C.

By: */s/ William J. Collins, III*
        William J. Collins, III
        Texas State Bar No. 04621500
        Fed. ID No. 3441
        2500 Two Houston Center
        909 Fannin Street
        Houston, Texas 77010-1003
        Telephone:  (713) 951-1000
        Facsimile:  (713) 951-1199
        wcollins@sheehyware.com

**ATTORNEY-IN-CHARGE FOR DEFENDANTS NAVISTAR, INC., NAVISTAR INTERNATIONAL CORPORATION, IC BUS, LLC AND IC BUS OF OKLAHOMA, LLC**

**Of Counsel**
SHEEHY, WARE & PAPPAS, PC
Laura S. Favaloro
Fed. ID No. 15581
Texas State Bar No. 00784929
Travis Cade Armstrong
Fed. ID No. 1690801
Texas State Bar No. 24069312

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| GABRIEL MIRANDA, SR., and | § | |
| MARIA FUENTES, Individually | § | |
| and as Representatives of the Estate of | § | |
| GABRIEL MIRANDA, JR., | § | |
| | § | CIVIL ACTION NO. 7:18-CV-00353 |
| v. | § | JURY |
| | § | |
| NAVISTAR, INC., NAVISTAR | § | |
| INTERNATIONAL CORPORATION, | § | |
| IC BUS, LLC, AND IC BUS OF | § | |
| OKLAHOMA, LLC | § | |

---

## ORDER

---

On this day came to be heard Plaintiffs Gabriel Miranda, Sr. and Maria Fuentes' (Individually and as Representatives of the Estate of Gabriel Miranda) Motion for Summary Judgment on 11 of Defendants' Affirmative Defenses.   After considering the Motion, the response, and the arguments of counsel, the Court has determined that the Motion should be, and hereby is, DENIED.

DATE: _____

_____
HONORABLE RANDY CRANE
UNITED STATES DISTRICT JUDGE