```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
 2                     McALLEN DIVISION

 3   GABRIEL MIRANDA, SR., and      *
     MARIA FUENTES, Individually    *
 4   and as Representatives of      *
     the Estate of GABRIEL          *
 5   MIRANDA, JR.,                  *
                 Plaintiffs,        *
 6                                  *
     VS.                            *  CIVIL ACTION NO. 7:18-CV-00353
 7                                  *
     NAVISTAR, INC., NAVISTAR       *  JURY
 8   INTERNATIONAL CORPORATION,     *
     IC BUS, LLC, AND IC BUS OF     *
 9   OKLAHOMA, LLC,                 *
                 Defendants.        *
10
     ****************************************************************
11
                    ORAL AND VIDEOTAPED DEPOSITION OF
12
                            ARMANDO CELEDON
13
                            MARCH 4, 2020
14
     ****************************************************************
15

16        ORAL AND VIDEOTAPED DEPOSITION OF ARMANDO CELEDON,

17   produced as a witness at the instance of the Defendant and duly

18   sworn, was taken in the above-styled and numbered cause on the

19   4th day of March, 2020 from 3:21 p.m. to 6:22 p.m. before

20   Katherine J. Brookbank, CSR in and for the State of Texas,

21   reported by method of machine shorthand, at the office of Ace

22   Court Reporting Services, 220 East University Drive, Edinburg,

23   Texas, 78539, pursuant to the Federal Rules of Civil Procedure

24   and the provisions stated on the record hereto.

25
```

```
 1                         APPEARANCES

 2

    FOR THE PLAINTIFF(S)
 3       Ms. T Nguyen
         TURLEY LAW FIRM
 4       6440 North Central Expressway
         1000 Turley Law Center
 5       Dallas, Texas 75206
         214.691.4025
 6       tn@wturley.com

 7

    FOR THE DEFENDANT(S)
 8       Mr. William J. Collins, III and Ms. Laura S. Favaloro
         SHEEHY WARE & PAPPAS, PC
 9       2500 Two Houston Center
         909 Fannin Street
10       Houston, Texas 77010
         713.951.1000
11       wcollins@sheehyware.com
         lfavaloro@sheehyware.com
12

13  ALSO PRESENT:
         Videographer, Ace Court Reporting Services
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                              INDEX
 2                                                               PAGE
 3    Appearances ---------------------------------------------   2
 4    Stipulations (Attached hereto) --------------------------  N/A
 5    ARMANDO CELEDON
 6         Examination by Mr. William J. Collins, III ----------   4
           Examination by Ms. T Nguyen -------------------------  46
 7         Examination by Mr. William J. Collins, III ---------- 130
           Examination by Ms. T Nguyen ------------------------- 130
 8
      Changes and Signature ----------------------------------- 132
 9
      Reporter's Certificate ---------------------------------- 133
10
                                EXHIBITS
11    NO. DESCRIPTION                                            PAGE
12    1 - Supplement Investigation Report ----------------------   9
13    2 - News Article ---------------------------------------   51
14    3 - Video ----------------------------------------------   68
15    4 - Text Messages --------------------------------------  105
16    5 - Interview Statement, Emily Lopez -------------------  112
17    6 - Written Statement, Michael Carlsted ----------------  114
18    7 - Interview Statement, Monica Dominguez --------------  117
19    8 - Written Statement, Lisa Lopez ----------------------  118
20    9 - Written Statement, Keith Disantis ------------------  119
21    10 - Written Statement, Jose A. Banda ------------------  120
22
23
24
25
```

1                           PROCEEDINGS
2              THE VIDEOGRAPHER:  Today's date is March 4th,
3    2020.  The time is approximately 3:21 p.m.  We were now on the
4    video record.  At this time if our court reporter would swear
5    the witness, we may then proceed.
6                           ARMANDO CELEDON,
7        having been duly sworn, testified as follows:
8                         E X A M I N A T I O N
9         Q    (BY MR. COLLINS) Good afternoon, sir.  Would you
10   please introduce yourself to us?
11        A    My name is Armando Celedon.
12        Q    And your title?
13        A    I am an investigator with the Edinburg Police
14   Department.
15        Q    So my name is William Collins.  We talked on the
16   phone a couple of times to try to set this deposition up.  And
17   sorry for the confusion.
18        A    Yes, sir.
19        Q    But I appreciate you coming.
20        A    Yes, sir.
21        Q    And just so, for the record, we didn't talk about the
22   case?
23        A    No.
24        Q    Have you --
25             MS. NGUYEN:  Objection.  Form.

```
 1  attorney up north.  And then I did -- I did ask him for his
 2  attorney's name and phone number.  And he said that, I believe,
 3  that he didn't have it or he was somewhere from up north.  And
 4  then from there we -- we left the -- the residence.
 5       Q    Okay.  Before you went to the residence, I think you
 6  just told us that you made the determination that it was a
 7  suicide?
 8       A    Yes, sir.
 9       Q    That was your determination?
10       A    My strong -- my determination from my investigation,
11  yes.
12       Q    And you communicated that conclusion to whom?
13       A    Well, my lieutenant, Lieutenant Jaime Rosa.
14       Q    All right.
15       A    And then we went to our administration, which was our
16  Assistant Chief Trevino.  And I believe at that time, I want to
17  say it was Chief Castaneda I want to say at that time.
18       Q    What was the time span between you making that
19  determination and talking to your -- were they your
20  superiors?
21       A    Yes.
22       Q    And -- and then going to the home.  Was it the same
23  day?
24       A    It was about two days.  November -- actually, like
25  November 14th --
```

```
 1        Q    Okay.
 2        A    -- of 2016.  And we advised them on November 16th,
 3   2016.
 4        Q    Now, that's the time period between the accident and
 5   when you advised them.  Correct?
 6        A    Yes, sir.
 7        Q    My question is, from the time period you came to the
 8   conclusion and told your superiors?
 9        A    I want to say this was probably on November 15th.
10        Q    Okay.
11        A    Maybe about -- right before I ended shift.  Probably
12   about 4:00 p.m., more or less.  I know it was before 5:00.  And
13   that's when my lieutenant, we got together with our Assistant
14   Chief Trevino and Chief Rolando Castaneda.  And I told them my
15   ruling was going to be a suicide.
16        Q    And did you get instructions to go to tell the
17   family, or --
18        A    Assistant Chief Trevino was the one that said that he
19   was going to accompany with me.  That he did want the family to
20   know.  Yes, sir.
21        Q    Was that the next morning that you went?
22        A    The next morning, yes, sir.
23        Q    Okay.
24        A    Yes.
25        Q    Was any of that information, to your knowledge, that
```

```
 1   you communicated to your superiors the evening before released
 2   to the public?
 3        A    No.
 4        Q    Okay.
 5        A    Like as far as us going out to the public and saying
 6   this is a suicide?
 7        Q    Yes.
 8        A    That I recall, no.
 9        Q    Okay.  Was it in writing, at that point in time, that
10   you made your conclusion that it was a suicide when you
11   informed your superiors?
12        A    With my supplement, yes, sir.
13        Q    Okay.  Now, after you came to that conclusion, did
14   you do any additional investigation?
15        A    As far as suicide?  As far as what happened?
16        Q    Right.
17        A    No.  I know I reviewed the body cameras from Officer
18   Rosales.  But as far as going back for anything else that we
19   can do, no.
20        Q    Okay.  Did -- and have you done anything since the
21   writing of this report until today to further investigate this
22   accident?
23        A    No, sir.
24        Q    Have you learned anything from the writing of your
25   report to today that changes your opinion as to what the cause
```

```
 1  was?
 2       A    No, sir.
 3                 MS. NGUYEN:  Objection.  Form.  And objection.
 4  Nonresponsive.
 5       Q    (BY MR. COLLINS) Can you tell the ladies and
 6  gentlemen of the jury the things you considered to come to your
 7  opinion that Gabriel Miranda's death was ruled a suicide?
 8       A    Well, I think with all the affidavits that were
 9  submitted by the students that were actually on the bus,
10  especially the -- the last year's students that were on the
11  back seats.  And they were saying that they actually saw
12  Gabriel open the door and actually jump out, not trying to hold
13  onto the door.  Or the door did not open by itself.  And other
14  affidavits that were obtained like Gabriel didn't look himself,
15  told one other individual that Emily had broken up with him.
16  And then Emily's statement -- affidavit, and then the pictures
17  that were taken and stuff.  No, I mean, it's -- I strongly
18  believe it was a suicide by Mr. Gabriel Miranda.
19       Q    So you considered the affidavits.  Did you consider
20  the video that you observed?
21       A    Well, the video was kind of hard because the video
22  shuts off.  It doesn't show anything on there.  You can hear
23  all that -- you can hear what the kids are saying -- well, you
24  can't say -- you can hear the kids saying:  He opened the door.
25  He opened the door.  He jumped out.  He jumped out.  And
```

```
 1  hearing all the kids screaming.  I believe you can even hear in
 2  the video Emily screaming out that he jumped out.
 3      Q    Okay.
 4      A    Yeah, I did review some of the video, sir.
 5      Q    And that's the video of the cameras on the bus?
 6      A    On the bus.  Yes, sir.
 7      Q    Did you consider the video from the business that --
 8           MS. NGUYEN:  Objection.  Leading.
 9           THE WITNESS:  I would say in some way that you
10  -- I mean, you see it at a distance.  It's not a very, very
11  clear picture of what you see.
12      Q    (BY MR. COLLINS) Uh-huh.
13      A    But my main ruling, I would say with the affidavits
14  and the -- the audio that you could hear on the -- on the -- on
15  the bus.
16      Q    Okay.  Did your testing of the door play any role in
17  your conclusion?
18      A    Well, the door, I mean, I would -- I would say, in my
19  opinion, the door was working properly.  It had nothing to do
20  with it, it was only by Mr. Miranda opening it intentionally.
21      Q    Okay.  Did you review any of the cell phone
22  communications yourself?
23           MS. NGUYEN:  Objection.  Leading.
24           THE WITNESS:  I think I viewed what the -- the
25  pictures were that were taken by Investigator Ruiz.  I was
```

1   coming back and forth through them.  And I know the mom would
2   send, saying she is messaging or telling kids, I think there
3   was some point wear all black day or something like that.
4        Q    (BY MR. COLLINS) Okay.
5        A    And I told the mom, I mean, basically I can't tell
6   her from stopping what she wants to put on social media.  It's
7   up to her.
8        Q    Okay.  Anything else that you recall considering that
9   may have been impacted your decision to say this was a suicide?
10       A    No.  Just the -- the messaging, the video, and all
11  the affidavits that we obtained.
12       Q    Okay.  Do you recall -- I think we talked about
13  earlier, an attorney by the name of --
14       A    Brasure or something.
15       Q    Yeah.  Chris Brasure?
16       A    Chris Brasure.  Yes, sir.
17       Q    Do you recall meeting with him?
18       A    I never met with him.  No, sir.
19       Q    Did you speak with him?
20       A    I spoke with him on the phone.
21       Q    In the report you indicate that Mr. Brasure stated
22  that he would submit to Open Records Act.  He also e-mailed
23  postings of -- postings on Emily Instagram, on a written --
24  written statement that Mr. Fox provided to the family and
25  another e-mail from Josh Hernandez.  Do you recall that?

```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF TEXAS
 2                         McALLEN DIVISION

 3   GABRIEL MIRANDA, SR., and      *
     MARIA FUENTES, Individually    *
 4   and as Representatives of      *
     the Estate of GABRIEL          *
 5   MIRANDA, JR.,                  *
                      Plaintiffs,   *
 6                                  *
     VS.                            *  CIVIL ACTION NO. 7:18-CV-00353
 7                                  *
     NAVISTAR, INC., NAVISTAR       *  JURY
 8   INTERNATIONAL CORPORATION,     *
     IC BUS, LLC, AND IC BUS OF     *
 9   OKLAHOMA, LLC,                 *
                      Defendants.   *
10
     ----------------------------------------------------------------
11                      CERTIFICATION FROM THE
            ORAL AND VIDEOTAPED DEPOSITION OF ARMANDO CELEDON
12                         MARCH 4, 2020
     ----------------------------------------------------------------
13
```

14    I, KATHERINE J. BROOKBANK, Certified Shorthand Reporter in

15 and for the State of Texas, do hereby certify that the facts as

16 stated by me in the caption hereto are true; that there came

17 before me the aforementioned named person, who was by me duly

18 sworn to testify the truth concerning the matters in

19 controversy in this cause; and that the examination was reduced

20 to writing by computer transcription under my supervision; that

21 the deposition is a true record of the testimony given by the

22 witness.

23    I further certify that I am neither attorney or counsel

24 for, related to or employed by, any of the parties to the

25 action in which this deposition is taken, and, further, that I

1  am not a relative or employee of any attorney or counsel
2  employed by the parties hereto, or financially or otherwise
3  interested in the action.
4      Pursuant to Rule 30(e)1:
5      XXXX Reading and Signing was requested.
6      ____ Reading and Signing was waived.
7      ____ Reading and signing was not requested.
8
9      Given under my hand and seal of office on this _____ day
10  of _____, 2020.

                                    _____
                                    KATHERINE J. BROOKBANK
                                    Certified Shorthand Reporter
                                    in and for the State of Texas
                                    Cert. No. 2060, Expires 8/31/2021